UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Consolidated Case Cause No. 4:10CV01230 AGF |
| WELLS FARGO BANK, N.A.; WACHOVIA BANK, N.A., n/k/a WELLS FARGO BANK, N.A.; and WACHOVIA SECURITIES, LLC, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This diversity matter is before the Court on two separate motions to dismiss various counts of Plaintiff's six-count amended complaint, for failure to state claims. The action arises out of the remarketing of certain bonds that were held in a trust. For the reasons set forth below, both motions shall be denied.

**PROCEDURAL HISTORY**

On April 8, 2010, Plaintiff Higher Education Loan Authority of the State of Missouri ("MOHELA") initiated an action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in state court. The complaint claimed (1) breach of fiduciary duty -- breach of trust, (2) breach of fiduciary duty -- breach of duty of loyalty, and (3) negligence, all based on the remarketing of certain variable rate demand bonds issued by

MOHELA. Pursuant to a Trust Indenture,[1] Wells Fargo was named as trustee of the trust that held the bonds and related assets. When the bonds were remarketed, Wells Fargo was also, through a corporate acquisition, the parent corporation of the remarketing agent, which was either Wachovia Bank, N.A., or Wachovia Securities, LLC.

On July 9, 2010, Wells Fargo removed the action to this Court based on diversity jurisdiction, and moved to dismiss the action on the ground that, as trustee, it could not be sued in tort by MOHELA. On November 12, 2010, while the motion to dismiss was pending, MOHELA filed a second action in state court, arising out of the same operative facts as the above action, this time naming as Defendants Wachovia Bank, N.A., n/k/a Wells Fargo Bank, N.A., and Wachovia Securities, LLC (the "Wachovia Defendants"). This second complaint alleged (1) breach of contract, (2) breach of fiduciary duty, and (3) negligence, with all three counts asserted against both Wachovia Defendants. On December 8, 2010, the second action was also removed to this Court, whereupon the two cases were consolidated by Order dated January 26, 2011.

On February 10, 2011, the Court ordered MOHELA to file an amended complaint encompassing all claims against all parties. MOHELA filed the current six-count amended complaint on February 18, 2011, seeking recovery from Wells Fargo for (1)

---

[1] An "indenture" is a "written agreement specifying the terms and conditions for issuing bonds, stating the form of the bond being offered for sale, interest to be paid, the maturity date, call provisions and protective covenants, if any, collateral pledged, the repayment schedule, and other terms. It describes the legal obligations of a bond issuer and the powers of the bond trustee . . . ." Thomas P. Fitch, Dictionary of Banking Terms 131, 232-33 (Irwin L. Kellner & Donald G. Simonson eds., 4th ed. 2000).

breach of fiduciary duty -- breach of trust, (2) breach of fiduciary duty -- breach of duty of loyalty, and (3) negligence (Counts I, II, and III); and from the Wachovia Defendants for (1) breach of contract, (2) breach of fiduciary duty, and (3) negligence (Counts IV, V, and VI). Wells Fargo now moves for dismissal of the three claims against it, and the Wachovia Defendants move for dismissal of the two tort claims against them.

**FACTUAL BACKGROUND**

In November 2005 and April 2006, MOHELA issued, pursuant to its statutory authority and for the purpose of financing and purchasing student loans, variable rate demand student loan revenue bonds totaling $383 million. The bonds, the proceeds from the sale of the bonds, and the student loans purchased with the proceeds were placed in a trust ("2005 Trust") governed by three Trust Indenture documents (collectively referred to hereinafter as the "Indenture") dated November 1, 2005, and April 1, 2006, between MOHELA and Wells Fargo. The Indenture named Wells Fargo as trustee of the 2005 Trust. (Doc. No. 21-2.)

One of the granting clauses of the Indenture provided, in part, as follows: "The Trustee shall hold in trust and administer the Trust Estate upon the terms and conditions set forth in this Indenture for the equal and pro rata benefit and security of each and every owner of Bonds, without preference . . . ." Other sections of the Indenture provided, in relevant part, as follows:[2]

---

[2] Although not noted by any of the parties, this language tracks the requirements set forth in the federal Trust Indenture Act of 1939, 15 U.S.C. § 77aaa – bbbb, enacted for the protection of bondholders.

Section 1001. Acceptance of Trusts; Certain Duties and Responsibilities.

The Trustee accepts and agrees to execute the trusts imposed upon it by this Indenture, but only upon the following terms and conditions:

(a) The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and in the absence of bad faith, negligence or willful misconduct on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture.

* * *

(c) No provision in this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except:

(1) that this subsection shall not be construed to limit the effect of subsection (a) of this Section;

(2) that the Trustee shall not be liable for any error of judgment made in good faith by an authorized officer of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

* * *

Section 1403. Benefit of Indenture.

This Indenture shall inure to the benefit of and shall be binding upon [MOHELA] and the Trustee and their respective successors and assigns, subject, however, to the limitations contained herein.

* * *

Section 507 of the Indenture provided that, when revenues to the Trust exceeded reserve requirements related to debts on the bonds, excess funds would be transferred to MOHELA.

Pursuant to the terms of the Indenture, the bonds were sold to investors in $100,000 denominations and were secured by (1) a "liquidity facility"[3] provided by Depfa Bank plc ("Depfa"), and (2) a bond insurance policy issued by MBIA Insurance Corporation. Bondholders, at their option and with one week's notice, could tender their bonds to Depfa for the bond principal plus accrued interest. Any bonds so tendered would then be held by Depfa as "liquidity provider bonds," which, pursuant to the Indenture, were to be resold by one of five named remarketing agents, including A.G. Edwards and Sons, Inc. ("A.G. Edwards"). MOHELA had entered into Remarketing Agreements with these entities, concurrently with the Indenture.

As a remarketing agent, A.G. Edwards was obligated to use its best efforts to remarket liquidity provider bonds and to set the bonds' weekly interest rate by taking market conditions into account. Under the Indenture and Remarketing Agreement, such bonds were not to be remarketed unless the liquidity facility was in place, and such bonds were not to be released by Wells Fargo, as trustee, unless Wells Fargo had received notice from Depfa to this effect. In return for its services, A.G. Edwards was to be paid

---

3 The Indenture defines a "qualified liquidity facility" as "a letter of credit, line of credit, standby bond purchase agreement or other liquidity facility or arrangement in favor of the Owners of [the bonds], issued by a bank . . . or other liquidity provider . . . for the purpose of providing a source of funds for the payment of all or a portion of the purchase price of [the bonds] that are tendered for purchase by the Owners thereof."

an annual fee "based on the weighted average principal amount of the bonds outstanding . . . ." The Remarketing Agreement further provided that "[A.G. Edwards] shall have no liability to [MOHELA] . . . for its actions in the performance of its duties as Remarketing Agent pursuant to the terms hereof and of the Indenture except for its gross negligence or willful misconduct." (Doc. No. 38-1.)

When the financial and credit crisis began in late 2007, bondholders began to tender their bonds to Depfa, and by July 2008, Depfa had purchased all the bonds and held them as liquidity provider bonds. Sometime after the inception of the Indenture, Wachovia Bank, N.A., "acquired" A.G. Edwards, and, as a result, one of the Wachovia entities became a remarketing agent for the bonds. On January 1, 2009, the parent of Wells Fargo (Wells Fargo & Co.) acquired the Wachovia Defendants.

On February 18, 2009, MBIA's rating was downgraded. Depfa deemed this to be an event of default and automatic termination of its liquidity facility under the Indenture. On April 8, 2009, MOHELA learned that the Wachovia remarketing agent planned to remarket $40 million of the bonds at 8.08% interest, while other remarketing agents had set their interest rates for MOHELA bonds at 0.75%. MOHELA alleges that neither Wells Fargo nor the Wachovia remarketing agent sought to verify whether the liquidity facility was in place at that time. MOHELA objected, but on April 13, 2009, the Wachovia remarketing agent closed on the sale, and Wells Fargo, as trustee, released the liquidity provider bonds it held in the 2005 Trust to an unnamed purchaser that MOHELA alleges was affiliated with Wells Fargo and/or the Wachovia Defendants.

The amended complaint further alleges that from that date until November 2009, when the 2005 Trust was refinanced, the Wachovia remarketing agent set the weekly interest rate on remarketed bonds at 6.0% or above while, in that same time frame, other remarketing agents of the bonds set the interest rates at 0.42% to 0.80%.

On November 4, 2009 (on the eve of the refinancing of the Indenture), Wells Fargo submitted an invoice for administrative and attorneys' fees in the amount of $187,747.80 and stated that it would not consent to the restructuring unless the invoice was paid.

MOHELA claims that, as a result of Defendants' actions, MOHELA was damaged by having to pay excessive interest on the remarketed bonds, and by having to delay efforts to refinance the 2005 Trust. As noted above, MOHELA seeks recovery of these damages from Wells Fargo, as trustee, in three counts. In Count I, labeled "Breach of Fiduciary Duty -- Breach of Trust," MOHELA claims that Wells Fargo breached its duty to verify whether the liquidity facility was in place before releasing the remarketed bonds; and breached its fiduciary duties by releasing the remarketed bonds under the circumstances that existed on April 13, 2009, including MOHELA's objection to the remarketing and the high interest rate. MOHELA seeks actual damages as well as punitive damages for Wells Fargo's "evil motive and/or reckless indifference" to MOHELA's rights.

In Count II, labeled "Breach of Fiduciary Duty -- Breach of Duty of Loyalty," MOHELA asserts that, as trustee, Wells Fargo owed a duty of undivided loyalty to MOHELA, a duty that Wells Fargo breached by the above alleged conduct, which

resulted in the Wachovia Defendants, entities affiliated with Wells Fargo through a common parent, selling the remarketed bonds at a high interest rate to a purchaser that was related to them. Count III asserts negligence against Wells Fargo for failure to exercise, as trustee, the highest degree of care in the above matters. In all three of these counts, MOHELA seeks "monetary" damages of an unspecified amount; in Counts I and II, MOHELA also seeks punitive damages and an order requiring Wells Fargo "to disgorge any profits and fees received as a result of its conduct."

Counts IV, V, and VI are against the Wachovia Defendants as remarketing agent. Count IV asserts that the Wachovia Defendants breached the Remarketing Agreement with MOHELA by, among other things, selling the remarketed bonds when the liquidity facility was not place, setting an interest rate on the bonds that was substantially higher than the market rate, and failing to disclose to MOHELA the identity of the purchaser of the remarketed bonds.

In Count V, MOHELA asserts breach of fiduciary duty against the Wachovia Defendants, as remarketing agent, by, among other things, engaging in self-dealing, selling the bonds when Depfa's liquidity facility was not in place, and selling the bonds at the high interest rate despite MOHELA's objection. Count VI asserts that the Wachovia Defendants, acting as remarketing agent in a professional capacity, were grossly negligent of their duty of care in the above matters. In Counts IV and V, MOHELA seeks monetary damages and disgorgement of profits and fees; in Count VI MOHELA seeks just monetary damages.

**ARGUMENTS OF THE PARTIES**

Wells Fargo first argues that Counts I, II, and III fail to state claims because they are premised on duties not specifically set forth in the Indenture, which provided that Wells Fargo undertook to perform "only such duties as are specifically set forth in this Indenture," and that "no implied covenants or obligations shall be read into this Indenture against the Trustee." In response to this argument, MOHELA cites the Indenture language that "no provision of this Trust shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct." According to MOHELA, this language explicitly contemplates tort claims such as Counts I, II, and III. MOHELA argues, moreover, that Wells Fargo's reading of the Indenture would render this negligence and misconduct language meaningless.

Each Defendant argues that MOHELA's tort claims against it are barred by the "economic loss doctrine," which, under Missouri law, bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty, and not from a duty distinct from the contract. Wells Fargo asserts that Counts I, II, and III are based on the performance of duties set forth in the Indenture. According to Wells Fargo, MOHELA is not a beneficiary of the 2005 Trust; rather, the bondholders are the only beneficiaries. Thus, Wells Fargo, as trustee, owes no extra-contractual duties to MOHELA, and the economic loss doctrine applies to preclude the three tort claims asserted in Counts I, II, and III.

MOHELA responds that to apply the economic loss doctrine to bar its tort claims against Wells Fargo, as trustee, would be contrary to the Missouri Uniform Trust Code,

Mo. Rev. Stat. §456.10-1001, which provides: "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust," and also contrary to Missouri case law which recognizes tort actions by a trust beneficiary against a trustee. MOHELA argues that it is a beneficiary under the 2005 trust because, as it alleged in its amended complaint, profits generated under the 2005 Trust could be used by MOHELA to fund further loans, forgive loans, or for other lawful purposes. Furthermore, the definition in the Uniform Missouri Trust Code of "beneficiary" as anyone who "has a present or future beneficial interest in a trust, vested or contingent," establishes that MOHELA is a beneficiary, or, at a minimum, that an issue of fact exists as to its beneficiary status. MOHELA also points to the Indenture provision that if Trust funds held by Wells Fargo were to exceed those owed to bondholders for the bonds' principal and accrued interest, MOHELA would receive those excess funds, and to the phrase that the "Indenture shall inure to the benefit of and shall be binding upon [MOHELA] . . . ."

MOHELA maintains that applying the economic loss doctrine, which is usually limited to the area of products liability, in cases like the present one would abolish established causes of action against professionals for malpractice or misfeasance in performance of their contracted-for services. MOHELA points to Missouri cases recognizing that liability in tort may co-exist with liability in contract arising out of the same events. MOHELA asserts that in any event, the tort claims asserted by MOHELA against Wells Fargo, as trustee, are dependent on duties that arise from Missouri statutory (i.e., the Missouri Uniform Trust Code) and common law and not exclusively from the 2005 Trust. According to MOHELA, Missouri courts recognize exceptions to the

economic loss doctrine for claims of fraud or where a professional standard of care is involved, with both exceptions applying here, as Missouri cases equate "constructive fraud" with breach of fiduciary duty.

In reply, Wells Fargo insists that MOHELA is not a beneficiary of the Trust, citing cases from other jurisdictions and pointing to the language in the granting clauses of the Indenture that "the Trustee shall hold in trust . . . the Trust Estate . . . for the equal and pro rata benefit . . . of each and every owner of [the bonds] . . . ." Wells Fargo states that contractual rights cannot be transformed into fiduciary duties, and that its duty to avoid a conflict of interest is owed to the bondholders only. Wells Fargo elaborates on its earlier arguments by asserting that the law recognizes a difference between an indenture trustee and an ordinary trustee, in that the latter has historic common law duties imposed beyond those imposed in the trust agreement, whereas the former's duties are exclusively determined by the terms of the indenture agreement. Wells Fargo maintains that an indenture trustee cannot have a fiduciary duty to both the bond issuer and the bondholders because the interests of the issuer and of the holders are directly adverse to each other. Thus, the professional-services exception to the economic loss doctrine does not apply here because Wells Fargo owed its duty of care to the bondholders and not to MOHELA. And the fraud exception does not apply, according to Wells Fargo, because MOHELA did not assert a fraud claim against Wells Fargo.

Similarly to Wells Fargo, the Wachovia Defendants argue that the economic loss doctrine bars MOHELA's tort claims against them because the duties allegedly breached were contemplated under the terms of the Remarketing Agreement. MOHELA responds

that the Remarketing Agreement specifically allows an action for gross negligence or willful misconduct, and that simultaneous tort and contract actions are valid in professional services cases. MOHELA again states that breach of fiduciary duty constitutes fraud.

In their reply, the Wachovia Defendants maintain that the Remarketing Agreement's provision that a remarketing agent could be liable for gross negligence or willful misconduct establishes that an action for such conduct can only be brought in contract.

## DISCUSSION

### Standard of Review and Applicable Law

To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "strikes a savvy judge that actual proof of the facts alleged is improbable" and recovery "very remote and unlikely." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (quoting another source). This, however, requires more than mere "labels and conclusions," and the complaint must state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

State law controls this action brought under diversity jurisdiction. *Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873 (8th Cir. 2011). "When a state's highest court has not decided an issue, it is up to [the federal district court sitting in

diversity] to predict how the state's highest court would resolve that issue." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). Decisions of intermediate state appellate courts are persuasive authority that the federal court should follow when they are the best evidence of what state law is. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006).

**Tort Claims Against Wells Fargo, as Trustee**

The Court first concludes that the language of the Indenture itself does not mandate dismissal of the tort claims against Wells Fargo. Under Missouri law, a court must not alter or construct a new contract through interpretation. *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 654-55 (Mo. Ct. App. 2007). A court's duty is limited to the interpretation of the contract. *Id*. at 655. In interpreting a contract, the court's central obligation is to "ascertain the intention of the parties and to give effect to that intent." *Id.* To determine the intent of the parties, the terms of a contract are read as a whole, and given their plain, ordinary, and usual meaning. *Id.* Unless the contract is ambiguous, the intent of parties is determined based on the contract alone, and not on extrinsic evidence. *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 874 (Mo. Ct. App. 2002). A contract is ambiguous if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain. *Id.* A contractual provision is not ambiguous just because the parties disagree over its meaning. *Id.*

Here, the Court cannot accept Wells Fargo's reading of § 1001(c) of the Indenture ("No provision in this Indenture shall be construed to relieve the Trustee from liability for

its own negligent action, its own negligent failure to act, or its own willful misconduct") to limit an action for negligence or willful misconduct to a contract action.

The Court further concludes that the economic loss doctrine does not bar MOHELA's tort claims against Wells Fargo, as trustee, as a matter of law. As recently stated by the Missouri Supreme Court,

> Missouri recognizes tort liability in professional negligence cases involving only economic loss. *See, e.g., Business Men's Assurance Co. of America v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App.1994) (tort recovery permitted when a client "sues for breach of a duty recognized by law as arising from the relationship or status the parties have created by their agreement"); *Miller v. Ernst & Young*, 892 S.W.2d 387 (Mo. Ct. App. 1995) (accounting malpractice).

*Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648, 652 n.2 (Mo. 2011) (rejecting economic loss doctrine in action for professional negligence against auditing firm and accounting firm related to the audit of the plaintiff's financial statements and preparation of its tax returns); *see also Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192-94 (Mo. Ct. App. 2010) (tracing the roots of the doctrine to cases seeking to impose tort liability on home builder or the manufacturers of defective products, and holding that "[t]he economic loss doctrine, however, has been held not to bar an action in tort if the contract recognizes a special relationship."); *Westfield, LLC v. IPC, Inc.*, ___ F. Supp. 2d ___, 2011 WL 4008117, at *3 (E.D. Mo. Sept. 8, 2011) ("[t]he economic loss doctrine . . . does not apply [in Missouri to] preclude tort liability in an action based on the negligent rendition of services by a professional.")

Certain Indenture provisions suggest that MOHELA had a fiduciary relationship with Wells Fargo, such as "This Indenture shall inure to the benefit of and shall be binding upon [MOHELA] . . . ." and the provision that excess funds in the Trust shall be transferred to MOHELA. The Court agrees with MOHELA that at a minimum a fact question is presented as to its beneficiary status under the Indenture, Missouri common law, and the Missouri Uniform Trust Code. Whatever the differences are between an indenture trustee and other trustees, MOHELA entered into an agreement with Wells Fargo for the provision by Wells Fargo of professional services. If, indeed, Wells Fargo released the bonds in an act of self-dealing and deception, as alleged by MOHELA in Counts I and II, and thereby caused economic loss to MOHELA, Wells Fargo may be held accountable in tort, and the Court will not dismiss these counts on this record.

The Court concludes that under *Children's Wish Foundation International, Inc*., and the other cases cited above, Count III would also not be precluded under the economic loss doctrine, at this point in the proceedings. Cases cited by Wells Fargo suggesting a different result, did not involve an indenture trustee/bond issuer relationship, nor a contract which appears to contemplate the very tort claims sought to be dismissed, nor the entangled relationships we see here between an indenture trustee, a remarketing agent of the bonds held in the trust, and possibly the new purchaser of the bonds. In sum, the Court believes that there are issues of fact as to whether Wells Fargo, separate and apart from its contractual duties under the Indenture, undertook and breached a duty of care connected therewith, and that the Missouri Supreme Court would not apply the

economic loss doctrine to preclude, as a matter of law, MOHELA's tort claims against Wells Fargo, as trustee.

The Court is not persuaded that a different result is mandated by ***Abbate v. Wells Fargo Bank, N.A.***, No. 10-6561 (C.D. Ca. Nov. 17, 2011), a case which Wells Fargo seeks leave to submit as supplemental authority. First, that case applied California and New York law. Second, the district court there felt comfortable saying as a matter of law that the plaintiffs' allegations did not state an independent tort duty. Here, the Court believes that further development of the record is necessary before Plaintiff's tort claims against Wells Fargo, as trustee, can be resolved.

**Tort Claims Against the Wachovia Defendants**

The situation is somewhat more straightforward with respect to the Wachovia Defendants, acting as a remarketing agent pursuant to a contract with MOHELA for the provision of professional services. Under Missouri law, "[w]here an agent puts himself in a position antagonistic to his principal, speculates in the subject of his agency, or secretly deals with property to the disadvantage of his principal he forfeits his right to a commission and must account for his profits." ***Mo. Highway & Transp. Comm'n v. Sample***, 702 S.W.2d 535, 538 (Mo. Ct. App. 1985). The precise scope of the agency relationship between MOHELA and its remarketing agents awaits further development of the record.

The Court finds unpersuasive the Wachovia Defendants' argument that the language in the Remarketing Agreement, stating that a remarketing agent can be held

liable for gross negligence and willful misconduct, dictates that such alleged conduct is actionable only in contract and not in tort.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo Bank, N.A.'s motion for leave to supplement the record is **GRANTED**. (Doc. No. 65)

**IT IS FURTHER ORDERED** that Defendant Wells Fargo Bank, N.A.'s motion to dismiss Counts I, II, and III is **DENIED**. (Doc. No. 41)

**IT IS FURTHER ORDERED** that the motion of Defendants Wachovia Bank, N.A., n/k/a Wells Fargo Bank, N.A.; and Wachovia Securities, LLC to dismiss Counts V and VI is **DENIED**. (Doc. No. 44)

Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2011