UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A.; WACHOVIA BANK, N.A. n/k/a WELLS FARGO BANK, N.A.; and WACHOVIA SECURITIES, LLC n/k/a WELLS FARGO ADVISORS, LLC, <br><br> Defendants. | Case No. 4:10-CV-01230 (JAR) |
| WACHOVIA BANK, N.A. n/k/a WELLS FARGO BANK, N.A.; and WACHOVIA SECURITIES, LLC n/k/a WELLS FARGO ADVISORS, LLC, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> DEPFA BANK PLC, <br><br> Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
THIRD-PARTY DEFENDANT DEPFA BANK PLC'S
<u>MOTION TO DISMISS THE THIRD-PARTY COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

    A.  The Agreements ..................................................................................................... 3

    B.  The MBIA Downgrade ........................................................................................ 4

    C.  MOHELA's Action Against Wachovia ............................................................... 5

D.  The Complaint ............................................................................................................ 6

ARGUMENT ....................................................................................................................... 6

    I.  Wachovia Has No Claim For "Contribution and Indemnity" ............................. 6

        A.  Wachovia's Contribution Claim Is Baseless And Must Be Dismissed ...................... 7

        B.  Wachovia's Claim For Indemnity Is Baseless And Must Be Dismissed.................. 10

    II.  The Court Lacks Personal Jurisdiction Over DEPFA In Any Event ............................... 12

CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*,
   2011 Mo. App. LEXIS 1382 (Mo. Ct. App. Oct. 25, 2011) ...................................................11

*Auto. Club Inter-Ins. Exch. by Club Exch. Corp. v. Farmers Ins. Co.*,
   646 S.W.2d 838 (Mo. Ct. App. 1982)........................................................................................10

*Bell Paper Box v. Trans W. Polymers*,
   53 F.3d 920 (8th Cir. 1995) ......................................................................................................14

*Bell v. Imperial Palace Hotel/Casino, Inc.*,
   200 F. Supp. 2d 1082 (E.D. Mo. 2001)......................................................................................13

*Burlington Indus. v. Maples Indus.*,
   97 F.3d 1100 (8th Cir. 1996) ....................................................................................................14

*China Resource Prods. (USA) v. China Distribs.*,
   1994 U.S. Dist. LEXIS 11407 (S.D.N.Y. Aug. 8, 1994) ..........................................................15

*Consul Gen. of the Republic of Indon. v. Bill's Rentals, Inc.*,
   330 F.3d 1041 (8th Cir. 2003) ....................................................................................................7

*Denny's Inc. v. Avesta Enters. Ltd.*,
   884 S.W.2d 281 (Mo. Ct. App. 1994)........................................................................................11

*Digi-Tel Holdings v. Proteq Telcoms.*,
   89 F.3d 519 (8th Cir. 1996) ......................................................................................................14

*Farrington v. FDIC*,
   2012 U.S. Dist. LEXIS 9876 (W.D. Mo. Jan. 27, 2012) .....................................................7, 10

*Glaxosmithkline Consumer Healthcare, L.P. v. ICL Performance Prods., L.P.*,
   2009 U.S. Dist. LEXIS 8352 (E.D. Mo. Feb. 5, 2009)..............................................................8

*Grow My Profits, LLC v. Kirkey Prods. Group, LLC*,
   2009 U.S. Dist. LEXIS 71741 (W.D. Mo. Aug. 13, 2009)........................................................13

*Helicopteros Nacionales De Colom. v. Hall*,
   466 U.S. 408 (1984)....................................................................................................................14

*In re Texas Prisoner Litig.*,
   41 F. Supp. 2d 960 *(W.D. Mo. 1999)* ........................................................................................13

*Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*,
  747 F.2d 448 (8th Cir. 1984) ........................................................................13, 15

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ...............................................................................12

*Marble Point Energy, Ltd v. Crusader Fin. Servs.*,
  2009 U.S. Dist. LEXIS 57333 (E.D. Mo. July 7, 2009) .......................................12

*Med. Shoppe Int'l, Inc. v. Anick, Inc.*,
  2010 U.S. Dist. LEXIS 78431 (E.D. Mo. Aug. 4, 2010) ......................................10

*Merchants Bonding Co. v. Noland*,
  2010 U.S. Dist. LEXIS 92525 (W.D. Mo. Sept. 7, 2010) ................................9, 10

*MHF Ins. Agency v. Harris of Kentucky*,
  1996 U.S. Dist. LEXIS 402 (N.D. Ill. Jan. 16, 1996) ..........................................15

*Miles v. Rich*,
  347 S.W.3d 477 (Mo. Ct. App. 2011)..............................................................7, 8, 9

*Myers v. Casino Queen*,
  2011 U.S. Dist. LEXIS 138703 (E.D. Mo. Dec. 2, 2011) ....................................14

*Nollman v. Armstrong World Industries, Inc.*,
  603 F. Supp. 1168 (E.D. Mo. 1985)......................................................................13

*Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*,
  2012 U.S. Dist. LEXIS 8641 (E.D. Mo. Jan. 25, 2012) ....................................8, 12

*Scullin Steel Co. v. National Ry. Utilization Corp.*,
  676 F.2d 309 (8th Cir. 1982) ...........................................................................12, 14

*St. Joseph v. Kaw Valley Tunneling, Inc.*,
  660 S.W.2d 26 (Mo. Ct. App. 1983)......................................................................12

*State ex rel. William Ranni Associates, Inc. v. Hartenbach*,
  742 S.W.2d 134 (Mo. 1987) ..................................................................................15

*Stavrides v. Zerjav*,
  848 S.W.2d 523 (Mo. Ct. App. 1993)....................................................................14

*T.J. Raney & Sons, Inc. v. Security Sav. & Loan Asso.*,
  749 F.2d 523 (8th Cir. 1984) .................................................................................14

*Tuttle v. Steris Corp.*,
  2011 U.S. Dist. LEXIS 7769 (E.D. Mo. Jan. 27, 2011) .......................................12

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) ...................................................................................14

*Warren v. Cardoza Publ'g, Inc.*,
    2011 U.S. Dist. LEXIS 138701 (E.D. Mo. Dec. 2, 2011) ..................................13, 14

*Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading, PA*,
    263 S.W.3d 736 (Mo. Ct. App. 2008) ...........................................................................9

**STATUTES**

R.S.Mo. § 506.500.1(2) ...............................................................................13, 14, 15

**OTHER AUTHORITIES**

Restatement (Second) of Torts Section 886A(1) (1965) ...............................................1

Third-party defendant DEPFA BANK plc ("DEPFA") respectfully submits this memorandum of law in support of its motion ("Motion")[1], pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the third-party complaint ("Complaint") filed on January 23, 20012 by third-party plaintiffs Wachovia Bank, N.A. (n/k/a Wells Fargo Bank, N.A.) and Wachovia Securities, LLC (n/k/a Wells Fargo Advisors, LLC) (together, "Wachovia").[2]

## PRELIMINARY STATEMENT

After moving unsuccessfully to dismiss MOHELA's claims that Wachovia improperly remarketed certain Bonds, Wachovia filed the Complaint as a ploy to displace its own liability onto DEPFA by asserting baseless claims for "Contribution and Indemnity." Such claims are improper under black-letter law, and the Complaint should be dismissed with prejudice.

First, Wachovia has not alleged – and cannot allege – *any* of the requisite elements of a contribution claim. A right to contribution exists only "when two or more persons become (i) liable *in tort* (ii) to the *same person* (iii) for the *same harm*." Restatement (Second) of Torts Section 886A(1) (1965) (emphasis added). Yet the Complaint does not allege that DEPFA is liable *in tort*; does not allege that DEPFA is liable to the *same person* (*i.e.,* MOHELA); and does not allege that DEPFA is "jointly obligated" with Wachovia for the *same harm*. Indeed, the only misconduct by DEPFA alleged in the Complaint – DEPFA's supposed failure to provide "prompt" notice of an Automatic Termination Event – is not only purely contractual in nature, but cannot give rise to liability under the express terms of the operative contract.

Second, Wachovia's claim for "legal and/or equitable indemnification" is equally

---

[1]   Exhibits attached to the declaration of Rudolph A. Telscher, Jr. and submitted in support of the Motion are cited herein as "Ex. __".

[2]   Capitalized terms used herein, unless otherwise indicated, have the meaning given them in the Court's December 2, 2011 Order, Dkt. No. 66 (the "December 2 Order", cited to as "Op. at __").

deficient.  Wachovia has no express right to contractual indemnity, and does not allege one.  Nor does Wachovia allege the elements of a claim for "implied" indemnity, which requires a binding contract between Wachovia and from which it could be implied that the parties intended that DEPFA indemnify Wachovia.  To the contrary, the Complaint is premised entirely on a contract to which Wachovia is not a party to that obligates *MOHELA to indemnify DEPFA for Wachovia's misconduct*.  Wachovia has likewise failed to allege a claim for "equitable" indemnity, which requires a "co-extensive" duty of indemnification.  None exists.

Third, Rule 12(b)(2) likewise requires that Wachovia's claims be dismissed with prejudice, as Wachovia fails to allege the Court's jurisdiction over DEPFA – an Irish company with a New York branch office.  As one example among various jurisdictional pleading inadequacies, the Complaint mechanically premises jurisdiction on tortious acts committed in Missouri, but does not allege any tort committed by DEPFA, whether in Missouri or elsewhere.  Similarly insufficient allegations seek to premise jurisdiction on DEPFA's "transacting business" in Missouri, even though the only relevant Missouri activities that are identified – writing to Wachovia in Missouri, and *failing* to give notice to Wachovia in Missouri – do not constitute "transacting business" under the Missouri long-arm statute.  Accordingly, even if Wachovia's claims were not dismissed on their merits (as they should be), they should be dismissed for lack of personal jurisdiction, as Wachovia has not established DEPFA's requisite "minimum contacts" with Missouri to satisfy both Missouri's long-arm statute and the Due Process Clause.

## STATEMENT OF FACTS[3]

In November 2005 and again in April 2006, MOHELA issued bonds to finance and purchase student loans (the "Bonds") pursuant to a Trust Indenture, as amended.  (*See* Op. at 3;

---

[3]      The facts stated herein derive from the Complaint; from MOHELA's First Amended Complaint ("FAC") (incorporated into the Complaint by reference (*see* Compl. ¶ 19)); from the documents incorporated by reference in the Complaint and the FAC; and from the Court's December 2 Order.

Compl. ¶¶ 7-8.)  Among other things, the proceeds of the Bonds were placed in trust with Wells

Fargo Bank, N.A. ("Wells Fargo") as trustee.  (*Id.*)  The Bonds were secured by a bond insurance

policy issued by MBIA Insurance Corporation ("MBIA"), and the Bonds' liquidity was

supported by a "liquidity facility" provided by DEPFA.  (Op. at 5; Ex. 1 at 1.)[4]

## A.    The Agreements

Pursuant to Standby Bond Purchase Agreements dated November 1, 2005 and April 1,

2006 (the "Purchase Agreements") between DEPFA, Wells Fargo as trustee, and MOHELA,

DEPFA agreed to act as a liquidity provider and to repurchase Bonds tendered by Bondholders

under certain conditions.  (Op. at 5; Compl. ¶ 10; Ex. 1 at 1.)  Among other conditions, the

Purchase Agreements provided that DEPFA's obligation to repurchase Bonds "shall immediately

terminate without notice or demand" in the event that MBIA's credit rating was lowered below

Baa3 by Moody's or BBB- by S&P, which would constitute an "Event of Default" and "Insurer

Adverse Change" under the Purchase Agreements. (Ex. 1 §§ 1.1, 7.01(a)(ii), 7.02(b).)  Wachovia

was not party to the Purchase Agreements.

The Purchase Agreements stated that DEPFA should provide MOHELA, Wachovia and

others "prompt" notice "after the occurrence of an Automatic Termination Event," *see* Compl. ¶

11, but expressly provided that DEPFA was not liable for failing to give such notice:

> Promptly after the occurrence of an Automatic Termination Event, the Bank shall
> give written notice of the same to the Trustee, the Paying Agent, the Bond
> Insurer, the Authority, and the Remarketing Agent; *provided however*, *that
> [DEPFA] shall incur no liability or responsibility whatsoever by reason of its
> failure to give such notice . . . .*

---

[4]     As liquidity provider under the Purchase Agreements, DEPFA "act[ed] through its New York branch."
(*See* Ex. 1.)

(Ex. 1 § 7.02(b) (emphasis added).)  The Purchase Agreements therefore explicitly provide that any failure by DEPFA to give "prompt" notice of an Automatic Termination Event cannot form the basis for liability against DEPFA.

Pursuant to Remarketing Agreements between MOHELA and Wachovia dated November 1, 2005 and April 1, 2006 (the "Remarketing Agreements") – agreements to which DEPFA was not a party[5] – Wachovia agreed to act as MOHELA's agent and use its best efforts to "solicit offers to purchase" and "re-sell" Bonds that had been tendered for purchase under the liquidity facility (the "Remarketed Bonds").  (Op. at 5; Ex. 2 § 2(c); Compl. ¶ 13.)  Wachovia was also responsible for, among other things, determining the interest rate on the Bonds.  (Op. at 5; FAC ¶ 23; Ex. 2 § 2(d).)  At the same time, however, the Remarketing Agreements prohibited Wachovia from remarketing the Bonds under certain circumstances, including "any time" that: (i) "[DEPFA] has given notice that an Event of Default under the Purchase Agreement[s] has occurred and is continuing," or (ii) "[DEPFA's] obligation to purchase Bonds under the Purchase Agreement[s] has been suspended or terminated pursuant to the terms thereof."  (Op. at 5; Ex. 2 § 2(h).)

**B.     The MBIA Downgrade**

On February 18, 2009, Moody's downgraded MBIA's credit rating to B3 (several notches below Baa3), causing an Event of Default and Insurer Adverse Change under the Purchase Agreements.  (Op. at 6; FAC ¶ 25; Ex. 1 §§ 1.1; 7.01(a)(ii).)  Notwithstanding the downgrade, on or about April 13, 2009, Wachovia remarketed $40,000,000 of the Bonds to a third-party (alleged by MOHELA to have been a Wachovia affiliate), and set the interest rate at or above 6%.  (Compl. ¶ 12; FAC ¶¶ 29, 41, 58.)  On April 22, 2009, DEPFA provided MOHELA,

---

[5]     DEPFA was an express third-party beneficiary to, but not a signatory of, the Remarketing Agreements.

4

Wachovia, and others written notice, pursuant to Section 7.02(b) of the Purchase Agreements, that an Automatic Termination Event had occurred, and that, as a result, DEPFA would no longer act as liquidity provider under the Purchase Agreements.  (Compl. ¶ 14; *id.*, Ex. A.)

## C.      MOHELA's Action Against Wachovia

On February 18, 2011, MOHELA filed the First Amended Complaint (the "FAC") against Wells Fargo and Wachovia (the "FAC Defendants").[6]  (Compl. ¶ 19; Dkt. No. 38.)  The FAC alleged three claims against Wachovia for:  (i) breach of the Remarketing Agreements (Count IV); (ii) breach of Wachovia's fiduciary duties to MOHELA arising out of the Remarketing Agreements (Count V); and (iii) negligence with respect to Wachovia's conduct as Remarketing Agent (Count VI).[7]  (Op. at 2-3, 7; FAC ¶¶ 70-86.)

More specifically, MOHELA alleged that Wachovia breached its *contractual duties* (Count IV) *and fiduciary duties* (Count V) under the Remarketing Agreements by:  "selling the Remarketed Bonds" at an improper time; "setting the interest rate on the Remarketed Bonds" at an improper level; and "failing to disclose to MOEHLA the identify of the buyer of the Remarketed Bonds."  (*See* FAC ¶¶ 73(a)-(e), 78(a)-(e).)  MOHELA also alleged that Wachovia *further breached its fiduciary duties* (Count V) under the Remarketing Agreements by:  (i) ignoring MOHELA's requests that Wachovia not remarket the Bonds; (ii) ignoring MOHELA's demand that Wachovia provide "the formula, process, or methodology used to set the interest rate on the Remarketed Bonds," and (iii) engaging in self-dealing by selling the Remarketed Bonds to a Wachovia affiliate.  (*See* FAC ¶¶ 78(f)-(h).)  MOHELA also alleged that Wachovia acted negligently (Count VI) by:  (i) failing to "confirm whether DEPFA's liquidity facility was

---

[6]      The complete procedural history of MOHELA's various actions against the Wachovia Defendants and Wells Fargo is set forth in the Court's December 2 Order.  (Op. at 1-3.)

[7]      The FAC also alleged three claims against Wells Fargo for breach of fiduciary duty and negligence (Counts I-III).

still in place at the time of remarketing"; (ii) failing to "ascertain facts that a responsible agent would have discovered before remarketing"; (iii) failing to "remarket the Bonds in accord with industry practice"; and (iv) "setting the interest rate on the Remarketed Bonds at an excessive level and by failing to remarket the Bonds in accord with industry practice."  (*See* FAC ¶¶ 84-85.)

On December 2, 2011, the Court denied the FAC Defendants' motions to dismiss the First Amended Complaint (Dkt. No. 66).  The FAC Defendants answered the FAC on January 9, 2012.  (*See* Dkt. Nos. 71, 72.)

**D.      The Complaint**

Two weeks later, on January 23, 2012, Wachovia filed the Complaint against DEPFA alleging a single claim for "Contribution and Indemnity", to the extent that the Wachovia Defendants are found liable to MOHELA on Counts IV, V and VI of the FAC.[8]  (Dkt. No. 76.) According to the Complaint, Wachovia is entitled to "legal and/or equitable" contribution and/or indemnification because "the actions or omissions of DEPFA were negligent and/or otherwise causal of the alleged damages, if any, of MOHELA."  (*See* Compl. ¶¶ 26-27.)  The Complaint seeks a judgment against DEPFA for the full amount of any judgment against Wachovia in favor of MOHELA, plus Wachovia's "costs and attorneys' fees" incurred defending against MOHELA's claims.

**ARGUMENT**

**I.      Wachovia Has No Claim For "Contribution and Indemnity"**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."

---

[8]      Wells Fargo did not institute a third-party action against DEPFA for contribution or indemnity arising from Counts I-III.

*Farrington v. FDIC*, 2012 U.S. Dist. LEXIS 9876, at *3 (W.D. Mo. Jan. 27, 2012) (*citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).  "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not suffice."  *Id*. at *3-4.

The Complaint asserts a single cause of action against DEPFA for "Contribution and Indemnity" arising out of Wachovia's liability to MOHELA, and claims that DEPFA's conduct was "negligent and/or otherwise causal of the alleged damages, if any, of MOHELA." (Compl. ¶ 26.)  Nowhere in the Complaint does Wachovia substantiate this empty assertion, or allege *how or why* DEPFA's conduct was "negligent" or "otherwise causal of" MOHELA's damages.  To the contrary, the Complaint's *only* specific allegation of misconduct by DEPFA is that DEPFA allegedly failed to provide "prompt" notice of an Automatic Termination Event under the Purchase Agreements.  (Compl. ¶ 18.)  As a matter of settled law, that sole allegation does not provide a basis for a claim of contribution or indemnification by Wachovia.[9]

### A.  Wachovia's Contribution Claim Is Baseless And Must Be Dismissed

With respect to Wachovia's liability to MOHELA for breach of the Remarketing Agreements (Count IV of the FAC), it is black-letter law that a right to contribution exists only "[w]hen two or more persons become liable *in tort* to the same person for the same harm."  *See Miles v. Rich*, 347 S.W.3d 477, 482 (Mo. Ct. App. 2011) (emphasis added) (*quoting* Restatement (Second) of Torts Section 886A(1) (1965)).  Because breach of contract is not a tort, Wachovia

---

[9]        The Complaint alleges that Missouri statutory or common law applies to Wachovia's contribution and indemnity claims, *see* Compl. ¶ 27, and DEPFA adopts this allegation for the purposes of this motion.  Wachovia's claims may be governed, however, by the laws of New York, South Dakota, Minnesota, North Carolina or Delaware.  (*See* Ex. 1 § 8.03; Compl. ¶¶ 1-3.)  Nevertheless, this Court need not engage in a conflict-of-law analysis, because the law in each of these jurisdictions is in accord with respect to the axiomatic principles of contribution and indemnification that require dismissal of the Complaint.  *See Consul Gen. of the Republic of Indon. v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003) ("Before considering any issues of conflict of laws, we must first determine whether there actually is a difference between the relevant laws of the different states).

cannot seek contribution (which requires an underlying tort) from DEPFA with respect to its potential liability for breach of the Remarketing Agreements under Count IV of the FAC. *See Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*, 2012 U.S. Dist. LEXIS 8641, at *11-13 (E.D. Mo. Jan. 25, 2012) (contribution unavailable for third-party plaintiff's alleged breach of contract); *Glaxosmithkline Consumer Healthcare, L.P. v. ICL Performance Prods., L.P.*, 2009 U.S. Dist. LEXIS 8352, at *8-9 (E.D. Mo. Feb. 5, 2009) (dismissing contribution claim where no tort claims had been asserted against third-party plaintiff).

Wachovia's claims for contribution arising out of Wachovia's alleged breach of fiduciary duty under the Remarketing Agreements (Count V) and negligent remarketing of the Bonds (Count VI) are equally (and fundamentally) deficient for two independent reasons, each of which requires dismissal.

*First*, it is black-letter law that "the party from who contribution is sought must be originally liable to the injured party," and DEPFA is not "originally liable" to MOHELA. *See Miles*, 347 S.W.3d at 484; *see also id.* at 482 ("To maintain an action for contribution, both the party seeking contribution and the defendant against whom contribution is sought must be . . . tortfeasors, originally liable to the plaintiff-injured party.") (*citing* W. Prosser, Law of Torts, § 50, at 309 (4th ed. 1971)). Here, DEPFA is not (and cannot be) liable to MOHELA for its alleged failure to provide "prompt" notice of the Automatic Termination Event under the Purchase Agreements, because the Purchase Agreements explicitly state that DEPFA *cannot be liable to MOHELA for failing to provide "prompt" notice of the Automatic Termination Event*. (*See* Ex. 1 § 7.02(b) (DEPFA "shall incur no liability or responsibility whatsoever by reason of its failure to give such notice").) Wachovia's contribution claim is therefore demonstrably

deficient and must be dismissed.[10] *See Miles*, 347 S.W.3d at 482 ("In the absence of *actionable* negligence toward the plaintiff, an alleged tortfeasor is not liable to other defendants for contribution") (emphasis in original); *Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading, PA*, 263 S.W.3d 736, 743 (Mo. Ct. App. 2008) (dismissing insurer's contribution claim against co-insured where, as here, the third-party defendant con-insurer had a "no liability" clause with the first-party plaintiff (the insured party) and thus could not be originally liable).

*Second*, Wachovia has not alleged (and cannot allege), as required to state a contribution claim, the existence of a "joint obligation" shared by Wachovia and DEPFA as "joint tortfeasors." *Safeco*, 2012 U.S. Dist. LEXIS 8641, at *13-14 ("the party seeking contribution and the party from whom it is being sought [must] share a common liability or burden . . ."); *Merchants Bonding Co. v. Noland*, 2010 U.S. Dist. LEXIS 92525, at *7 (W.D. Mo. Sept. 7, 2010) ("What is key is that the action for contribution accrues from the existence of a joint obligation on a liability shared by tortfeasors.") (*quoting McNeill Trucking Co. v. Mo. State Highway & Transp. Comm'n*, 353 S.W. 3d 846, 849 (Mo. 2001)).

Wachovia alleges no such "joint obligation" in the Complaint, because none exists. Wachovia seeks contribution from DEPFA for Wachovia's liability for breaching fiduciary duties to MOHELA under the Remarketing Agreements (Count V) and for Wachovia's negligence as a remarketing agent (Count VI). But *DEPFA was not a remarketing agent*, and had neither the duty nor the ability to "remarket" or "sell" the Bonds or set the interest rate for the Remarketed Bonds. As a result, DEPFA owes no fiduciary duties to MOHELA under the Remarketing Agreements. Rather, DEPFA's only obligation to MOHELA alleged in the

---

[10]     Indeed, Wachovia's attempt to rely on the Purchase Agreements as a basis for asserting contribution claims against DEPFA is absurd, not only because Wachovia was not a party to the Purchase Agreements, but because the Purchase Agreements expressly provide that DEPFA cannot be liable for the "acts or omissions of [Wachovia]." (Ex. 1 § 8.10.)

Complaint – providing "prompt" notice of an Automatic Termination Event under the Purchase Agreements (Compl. ¶ 11) – is an obligation fundamentally distinct from Wachovia's obligations.  The lack of a "joint obligation" to MOHELA is fatal to Wachovia's claim for contribution.[11]

Indeed, Wachovia does not allege that DEPFA was a "joint tortfeasor" at all.  The only conduct by DEPFA alleged in the Complaint – DEPFA's supposed failure to provide "prompt" notice (Compl. ¶ 11) – is a *contractual* duty stemming from the Purchase Agreements.  *See Med. Shoppe Int'l, Inc. v. Anick, Inc.*, 2010 U.S. Dist. LEXIS 78431, at *14-15 (E.D. Mo. Aug. 4, 2010) ("Where a duty alleged to have been breached stems from a contract, the breach does not amount to" a tort).  Thus, Wachovia is precluded from seeking contribution from DEPFA as a joint *tortfeasor.  See Merchants Bonding Co.*, 2010 U.S. Dist. LEXIS 92525, at *7 (dismissing contribution claim where, as here, the third-party defendant's duty to the plaintiff arose out of a contract); *Auto. Club Inter-Ins. Exch. by Club Exch. Corp. v. Farmers Ins. Co.*, 646 S.W.2d 838, 840 (Mo. Ct. App. 1982) (same).

Because Wachovia has not alleged (and cannot allege) that Wachovia and DEPFA:  (i) share a "joint obligation" to MOHELA, and (ii) are "joint tortfeasors", the Complaint does not come close to alleging the basic elements of a claim for contribution, and must be dismissed.

## B.   <u>Wachovia's Claim For Indemnity Is Baseless And Must Be Dismissed</u>

The Complaint also seeks "legal and/or equitable" indemnification from DEPFA, with no further explanation of the basis for this claim.  (*See* Compl. ¶ 27.)  Wachovia's generic and unsubstantiated claim for "indemnification" should be dismissed on this basis alone.  *See Farrington*, 2012 U.S. Dist. LEXIS 9876, at *3-4 (complaint must plead more than "conclusions

---

[11]   The lack of any co-extensive "joint obligation" is clear from the fact that Wachovia was not obligated to provide "prompt" notice of an Automatic Termination Event under the Purchase Agreements, or under any other agreement.

. . . or naked assertions devoid of further factual enhancement").

In any event, Wachovia has not pleaded a claim for indemnification.  There are three types of indemnity:  (1) express contractual indemnity, (2) implied contractual indemnity, and (3) equitable indemnity.  *See Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*, 2011 Mo. App. LEXIS 1382, at *18-19 (Mo. Ct. App. Oct. 25, 2011).  None applies to the instant action.

Wachovia does not allege an express contractual right to indemnity, and none exists.

To state a claim for implied contractual indemnity, Wachovia must allege the "existence of a binding contract between two parties that necessarily implied the right of indemnification," and "must show that the parties to the contract intended the indemnitor to be responsible for the loss."  *Am. Nat'l Prop. & Cas. Co.*, at *19 (*citing* 41 Am. Jur. 2d *Indemnity* § (2005)).  Wachovia makes no such showing in the Complaint, and there is no binding contract between Wachovia and DEPFA from which indemnity could even be implied.  The Purchase Agreements – to which Wachovia is not a party, but on which Wachovia nonetheless bases its Complaint – not only fail to "imply" such an indemnity, but they *expressly provide* that:  (i) DEPFA cannot be liable in any way for any failure to provide "prompt" notice, Ex. 1 §§ 7.02(b), 8.10; and (ii) *MOHELA will indemnify DEPFA* "from and against any and all claims, damages, losses, [and] liabilities," including claims and liabilities incurred "by reason of or in connection with" the "remarketing or resale of the Bonds," *id*. § 8.11(b).[12]

Lastly, to allege a claim for "equitable indemnity," the "indemnitee and indemnitor" must "have co-extensive, identical duties" to the injured party, and the indemnitee must show that "an identical duty owed by one is discharged by the other."  *See Denny's Inc. v. Avesta Enters. Ltd.*, 884 S.W.2d 281, 291 (Mo. Ct. App. 1994).  The Complaint fails both tests:  DEPFA and

---

[12]      In other words – and demonstrating the absurdity of Wachovia's third-party claim against DEPFA – if DEPFA was somehow liable to Wachovia for the conduct alleged in the FAC, then MOHELA would be obligated under the Purchase Agreements to indemnify DEPFA for that liability.

11

Wachovia do not owe MOHELA "coextensive, identical duties," and Wachovia has not alleged (and cannot allege) that it "discharged" such an "identical duty." *See Safeco Ins. Co. of Am., LLC*, 2012 U.S. Dist. LEXIS 8641, at *13-14 (dismissing indemnity claim because duties to injured party were not identical since, as here, third-party defendant had no liability to the injured party); *St. Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 31 (Mo. Ct. App. 1983) (finding that indemnitee and indemnitor lacked identical duties because, like here, indemnitor owed a duty to the injured party arising out of its negligence and indemnitee owed a duty to the injured party arising out of its contract).

## II.     The Court Lacks Personal Jurisdiction Over DEPFA In Any Event

It is Wachovia's burden to establish that personal jurisdiction exists. *See Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982) (although jurisdictional facts "must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a *prima facie* showing of jurisdiction may be found to exist."). To establish personal jurisdiction in Missouri[13], "the plaintiff must make a prima facie showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute . . . and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotes omitted).[14] Missouri's long-arm statute is co-extensive with the requirements of due

---

[13]     Federal courts sitting in diversity "must apply the law of the forum state to determine whether personal jurisdiction may be asserted over a party." *Tuttle v. Steris Corp.*, 2011 U.S. Dist. LEXIS 7769, at *5 (E.D. Mo. Jan. 27, 2011).

[14]     The Eighth Circuit has established a five-factor test to determine whether minimum contacts exist: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *See Johnson*, 614 F.3d at 794. The first three factors are the "primary" factors and are co-terminus with the "transacting business" analysis. *Id.* The remaining factors weigh heavily in favor of dismissal here, however, where *no Missouri citizens* are party to the third-party action; discovery in the primary action is nearly complete (*see* Dkt. No. 84); and it would plainly be inconvenient for DEPFA, an Irish company with a New York branch, to litigate in Missouri. *See Marble Point Energy, Ltd v. Crusader Fin. Servs.*, 2009 U.S. Dist. LEXIS

process.  *See Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F. Supp. 2d 1082, 1085 (E.D. Mo. 2001).

Wachovia's sole basis for jurisdiction in the Complaint is a conclusory reference to sections of Missouri's long-arm statute[15] covering defendants who (i) "transact business" in Missouri or (ii) commit a tort in Missouri.  (Compl. ¶ 6 (*citing* R.S.Mo. § 506.500.1(1) & (3)).) Drawing all reasonable inferences in the Complaint in Wachovia's favor, DEPFA's "activities" alleged in the Complaint satisfy neither Missouri's long-arm statute nor the Due Process clause.

Personal jurisdiction based on "transacting business" in Missouri requires (i) "some activity related to the transaction in question undertaken by the non-resident defendant in Missouri," and (ii) that Wachovia's claims arise from those activities.  *See Grow My Profits, LLC v. Kirkey Prods. Group, LLC*, 2009 U.S. Dist. LEXIS 71741, at *8 (W.D. Mo. Aug. 13, 2009); R.S.Mo. § 506.500.2.  DEPFA's "activities" alleged in the Complaint that give rise to Wachovia's claims do not come close to meeting this standard.  Specifically:

- Wachovia alleges (Compl. ¶ 18) that DEPFA failed to give "prompt" notice of an Automatic Termination Event under the Purchase Agreements (to certain Missouri entities, among others).  The *failure* to act, however, is not "*transacting* business."  *See, e.g., Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984) (Missouri courts require "some activity within the state"); *Nollman v. Armstrong World Industries, Inc*., 603 F. Supp. 1168, 1171 (E.D. Mo. 1985) (long-arm jurisdiction requires "the 'doing' of said acts" in the state).

- Wachovia alleges (Compl. ¶ 14) that DEPFA sent a Termination Letter (to certain Missouri entities, among others) on April 22, 2009.  However, the "use of the mail or telephone communications, without more, does not constitute the transaction of business for the purposes of long arm jurisdiction in Missouri."  *Warren v. Cardoza Publ'g, Inc.*, 2011 U.S. Dist. LEXIS 138701, at *11-12 (E.D. Mo. Dec. 2, 2011) (telecommunications, among other things, to plaintiff in Missouri under six publishing contracts did not amount

---

57333, at *14 (E.D. Mo. July 7, 2009) (declining to exercise personal jurisdiction because, among other things, Missouri did not have an interest in lawsuit between non-citizens).

[15]     The Wachovia Defendants therefore implicitly – and correctly – concede that general jurisdiction over DEPFA is lacking.  *See In re Texas Prisoner Litig.*, 41 F. Supp. 2d 960, 962 & 962 n.1 (W.D. Mo. 1999) (noting that Missouri's long-arm statute is "simply irrelevant to general jurisdiction").

to "transacting business").  *See also Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (100 telephone calls to plaintiff in Missouri insufficient to establish minimum contacts).

Even those "activities" alleged in the Complaint (or incorporated in the Complaint by reference) that do not give rise to Wachovia's claims – and are therefore excluded from the "transacting business" analysis – do not give rise to personal jurisdiction.  For example:

- Wachovia alleges (Compl. ¶ 10) that DEPFA entered into the Purchase Agreements with MOHELA (a Missouri entity).  But entering into a contract with a Missouri entity (not Wachovia) – especially one governed by New York law[16] – does not give rise to jurisdiction in Missouri.[17]  *See Bell Paper Box v. Trans W. Polymers*, 53 F.3d 920, 922 (8th Cir. 1995) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state," especially when "the nonresident defendant is a buyer, rather than a seller").

- MOHELA alleges in the FAC (FAC ¶ 17) that DEPFA, "acting through its New York Branch", *see* Ex. 1, purchased the Bonds and held them as liquidity provider.[18]  Even assuming that MOHELA's allegations are relevant to jurisdiction over this third-party claim not involving MOHELA, DEPFA's purchases do not establish jurisdiction over DEPFA in Missouri.  *See Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408, 418 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Stavrides v. Zerjav*, 848 S.W.2d 523, 529 (Mo. Ct. App. 1993) (defendant did not "transact business" in Missouri where, as here, "obligations under the agreement were limited to receiving the notes, collecting the payments, and remitting them to the lender").[19]

---

[16]     *See, e.g., Digi-Tel Holdings v. Proteq Telcoms.*, 89 F.3d 519, 523 (8th Cir. 1996)  ("a choice-of-law provision may be considered for jurisdictional purposes as it may 'reinforce (defendant's) deliberate affiliation with the forum" that is referenced in such provision "and the reasonable foreseeability of possible litigation there'")

[17]     In a telling concession, Wachovia does not premise long-arm jurisdiction on "making of any contract" in Missouri under R.S.Mo. § 506.500.1(2).

[18]     Notably, because DEPFA provided a service (acting as liquidity provider for the Bonds) and did not place products in the stream of commerce, "the contact requirements for long-arm jurisdiction are more stringent."  *Myers v. Casino Queen*, 2011 U.S. Dist. LEXIS 138703, at *8 (E.D. Mo. Dec. 2, 2011).

[19]     *See also T.J. Raney & Sons, Inc. v. Security Sav. & Loan Asso.*, 749 F.2d 523, 525 (8th Cir. 1984) (minimum contacts lacking even though defendant:  (i) "maintained an active account" with plaintiff, a securities brokerage firm in the forum state; (ii) purchased government bonds through the plaintiff "in large denominations"; and (3) entered into reverse purchase agreements with the plaintiff in which the plaintiff would hold the bonds for collateral for a loan which plaintiff extended to defendant all through "the use of interstate mail, telephone or banking facilities"); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (telecommunications and wire-transfers to plaintiff in Missouri insufficient to confer jurisdiction); *Scullin Steel Co.*, 676 F.2d at 314  ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the minimum contacts required by due process"); *Warren*, 2011 U.S. Dist. LEXIS 138701, at *11-12 (E.D.

This is the sum total of DEPFA's activities alleged in the Complaint and FAC, and they are insufficient to establish jurisdiction over DEFPA in Missouri under the long-arm statute.

Jurisdiction is also manifestly lacking under R.S.Mo. § 506.500.1(3) – which vests Missouri courts with jurisdiction over defendants committing torts with Missouri effects – because Wachovia has not properly alleged that DEPFA committed a tort. *See Institutional Food Marketing Associates, Ltd.*, 747 F.2d at 453 (plaintiff must make "a *prima facie* showing that the tort has been committed."). Wachovia's claims (Compl. ¶¶ 11, 18) are premised entirely on DEPFA's alleged failure to act in accordance with a contract: *i.e.,* "to give prompt notice of the occurrence of an Automatic Termination Event" under the Purchase Agreements. *See State ex rel. William Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134, 140-41 (Mo. 1987) ("the mere failure to perform a contract cannot serve as the basis of tort liability" for purposes of establishing long-arm jurisdiction based on the commission of a tort).[20]

## CONCLUSION

Wachovia has not alleged a claim for "Contribution and Indemnity", and this Court lacks jurisdiction over DEPFA. DEPFA's motion to dismiss should be granted for both reasons.

---

Mo. Dec. 2, 2011) (among other things, royalty payments paid to plaintiff in Missouri under six publishing contracts did not amount to "transacting business").

[20]     *Accord China Resource Prods. (USA) v. China Distribs.*, 1994 U.S. Dist. LEXIS 11407, at *33 (S.D.N.Y. Aug. 8, 1994) (that plaintiff could not transform contract claim into a tort for jurisdictional purposes under New York's long-arm statute); *MHF Ins. Agency v. Harris of Kentucky*, 1996 U.S. Dist. LEXIS 402, *18 (N.D. Ill. Jan. 16, 1996) (same, under Illinois's long-arm statute).

Dated: March 26, 2012                    HARNESS DICKEY & PIERCE, PLC


By:  /s/ Rudolph A. Telscher, Jr._____
    Rudolph A. Telscher, Jr. 41072MO
    7700 Bonhomme, Suite 400
    St. Louis, MO 63105
    Telephone:  (314) 726-7500
    Facsimile:  (314)  726-7501

and

    KASOWITZ, BENSON, TORRES
    & FRIEDMAN LLP

    Mark P. Ressler (*pro hac* pending)
    Michael A. Hanin (*pro hac* pending)
    Henry B. Brownstein (*pro hac* pending)
    1633 Broadway
    New York, New York  10019
    Telephone:  (212) 506-1700
    Facsimile:  (212) 506-1800

    *Attorneys for Third-Party Defendant DEPFA*
    *BANK plc*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of March, 2012, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent via operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


<u>/s/ Rudolph A. Telscher, Jr.          </u>