# Exhibit 2

EXECUTION COPY

REMARKETING AGREEMENT

Dated as of November 1, 2005

Between

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI

And

A.G. EDWARDS & SONS, INC.,
as Remarketing Agent

$20,000,000
Tax-Exempt
Variable Rate Demand
Student Loan Revenue Bonds
Senior Series 2005C

K-107555

EXHIBIT
1

# REMARKETING AGREEMENT

$20,000,000
Tax-Exempt
Student Loan Revenue Bonds
Senior Series 2005C

**REMARKETING AGREEMENT** dated as of November 1, 2005 (the **"Agreement"**), between the **HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI** (the **"Authority"**) and **A.G. EDWARDS & SONS, INC.**, as remarketing agent (the **"Remarketing Agent"**), in connection with the Authority's above-described bonds (the **"Bonds"**).

    1.    The Authority has issued the Bonds pursuant to a Trust Indenture, dated as of November 1, 2005 (the **"Original Indenture"**), as amended and supplemented by a Supplemental Trust Indenture No. 1 (the **"Supplemental,"** and collectively, the **"Indenture"**) between the Authority and Wells Fargo Bank, N.A., as trustee (the **"Trustee"**), the proceeds of which were used by the Authority as provided in the Indenture.

    2.    Pursuant to the Indenture, the Bonds bear interest at variable interest rates and, under certain circumstances, at the times and in the manner provided in the Indenture, may be, and at certain times are required to be, tendered by the owners thereof for purchase.

    3.    Concurrently with the execution and delivery of this Agreement, the Authority, the Trustee and DEPFA BANK plc, acting by and through its New York Branch (the **"Bank"**) will enter into a Standby Bond Purchase Agreement of even date herewith (the **"Standby Bond Purchase Agreement"**) under which the Trustee shall be entitled to draw up to amount sufficient to pay the purchase price of Bonds tendered for purchase.

    4.    The Authority desires to appoint **A.G. Edwards & Sons, Inc.** as its agent to perform the services of Remarketing Agent provided for herein and in the Indenture when the Bonds are in a Daily Rate Mode or a Weekly Rate Mode, and **A.G. Edwards & Sons, Inc.** is willing to do so on the terms and conditions set forth herein.

**Capitalized terms used in this Agreement and not otherwise defined in this Agreement shall have the meanings provided therefor in the Indenture.**

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, covenants and agreements set forth in this Agreement, the parties to this Agreement covenant and agree as follows:

    1.    **Acceptance of Appointment.**

    (a)    A.G. Edwards & Sons, Inc. is appointed as the exclusive Remarketing Agent for the Bonds, and, in reliance on the representations contained herein and subject to the terms hereof, accepts such appointment and agrees to perform the duties and obligations of the Remarketing Agent set forth in this Agreement and the Indenture.

(b) The Remarketing Agent represents that it qualifies to serve as a Remarketing Agent pursuant to Section 404 of the Supplemental, is a member of the National Association of Securities Dealers, Inc., that it routinely engages in the remarketing of securities such as the Bonds, and that it is authorized by law and has the capacity to perform all the duties imposed upon it as Remarketing Agent by this Agreement and the Indenture, including but not limited to Section 404 of the Supplemental.

2. **Duties and Liabilities of Remarketing Agent.**

(a) The Remarketing Agent shall use its best efforts to solicit offers to purchase, at a price of 100% of the principal amount thereof plus accrued interest, Bonds that have been tendered or deemed tendered by the owners thereof pursuant to the Indenture and any Bonds purchased and held by the Bank pursuant to the terms of the Indenture, and shall perform the other obligations of the Remarketing Agent as set forth herein and in the Indenture. The Remarketing Agent will be acting solely as the Authority's agent in the re-sale of the Bonds, and the Remarketing Agent's responsibility is limited to the use of its best efforts to solicit offers to purchase the Bonds. The commitment to remarket the Bonds shall not be construed to obligate the Remarketing Agent to use any of its own funds or otherwise incur financial liability in acting as Remarketing Agent hereunder.

(b) The Remarketing Agent shall hold all moneys delivered to it under the Indenture for the purchase of Bonds for the benefit of the person or entity that shall have so delivered such moneys until the Bonds purchased with such moneys shall have been delivered to or for the account of such person or entity.

(c) The Remarketing Agent shall settle all transactions hereunder pursuant to customary industry practice and agrees to keep such books and records regarding its remarketing of the Bonds as shall be consistent with prudent industry practice and shall make such books and records available for inspection by the Authority, the Trustee and the Bank at all reasonable times.

(d) The Remarketing Agent shall determine and give notice of the interest rate for the Series 2005 Bonds for each rate period in accordance with the provisions of the Supplemental.

(e) The Remarketing Agent, after prior written notice to the Authority, may cease offering and selling the Bonds with immediate effect for reasonable cause including, without limitation (1) a general suspension or material limitation in trading in securities generally on the New York Stock Exchange, (2) a general moratorium on commercial banking activities in New York declared by either Federal or New York State authorities, (3) the engagement by the United States in hostilities or escalation of existing hostilities or a declaration of a national emergency or war, (4) a pending or proposed change in applicable tax laws, (5) a material adverse change in the financial condition of the Authority, the Bond Insurer or the Bank, (6) a downward revision or withdrawal of any rating assigned to the Bonds, (7) an imposition of material restrictions on the Bonds or similar obligations, (8) a material misstatement or omission in the Offering Document (herein defined), as then modified or supplemented, or (9) the Indenture or the Standby Bond Purchase Agreement has been amended, modified or supplemented in any way which would materially and adversely affect the Bonds, if the effect of any of which in

    the Remarketing Agent's judgment makes it impracticable or inadvisable to proceed with solicitation of offers to purchase the Bonds, and so long as such situation continues to exist.

 (f) The Remarketing Agent, in its individual capacity, either as principal or agent, may buy, sell, own, hold and deal in any of the Bonds, and may join in any action that any owner of any Bond may be entitled to take with like effect as if it did not act in any capacity hereunder. The Remarketing Agent, in its individual capacity, either as principal or agent, may also engage in or be interested in any financial, underwriting, derivative, lending or other transaction with the Authority and may act as depository, trustee or agent for any committee or body of bondowners or owners of other obligations of the Authority as freely as if it did not act in any capacity hereunder. The Remarketing Agent shall not remarket any Bonds pursuant to this Agreement to the Authority or a guarantor of the Authority (or any "insider", as defined in the United States Bankruptcy Code, of the Authority).

 (g) It is the expressed intention of the parties hereto that no purchase, sale or transfer of any Bonds, as herein provided, or the setting of interest rates in respect thereof, shall constitute or be construed to be the extinguishment of the indebtedness represented thereby or the reissuance or the refunding of any indebtedness represented thereby.

 (h) The Remarketing Agent shall not remarket the Bonds at any time if (i) the Bank has given notice that an Event of Default under the Standby Bond Purchase Agreement has occurred and is continuing, (ii) the Bank's obligation to purchase Bonds under the Standby Bond Purchase Agreement has been suspended or terminated pursuant to the terms thereof, or (iii) an event of default under the Indenture has occurred and is continuing.

 The performance by the Remarketing Agent of its duties and obligations hereunder throughout the term of this Agreement shall be subject at all times to its ability to perform such duties and obligations in conformance with then applicable law. If the Remarketing Agent determines in good faith that there is a substantial likelihood that the performance of its duties and obligations hereunder, in the manner contemplated in this Agreement and the Indenture, may not be in conformance with then applicable law or if the Remarketing Agent determines in good faith that there is a substantial question as to an adverse effect on the Bonds of any action that may be taken hereunder, then, in any such case, the Remarketing Agent shall have the right to retain counsel with respect to such matter and the performance by the Remarketing Agent of its obligations hereunder shall be subject to its receipt of an opinion of counsel, satisfactory to the Remarketing Agent, as to such matter. The fees and expenses of any such counsel shall be paid by the Remarketing Agent.

 The Remarketing Agent shall have no liability to the Authority, the Trustee, the Bank or any bondowner for its actions in the performance of its duties as Remarketing Agent pursuant to the terms hereof and of the Indenture except for its gross negligence or willful misconduct.

 3. **Fees and Expenses.** While the Bonds are in a Daily Rate Mode or a Weekly Rate Mode, the Authority shall pay the Remarketing Agent directly, as compensation for its services hereunder, an annual fee (computed on the basis of a 360 day year and actual days elapsed) equal to 6.5 basis points (0.065%) per annum, based on the weighted average principal amount of the Bonds outstanding in such Modes during each three-month period, or such other amount as may be agreed upon in writing from time

to time by the Authority and the Remarketing Agent, payable quarterly in arrears in four annual quarterly installments on each **January 1, April 1, July 1,** and **October 1** after the date hereof and upon payment in full of the Bonds. The Authority shall also pay all expenses in connection with delivering the remarketed Bonds, including but not limited to, associated computer and delivery charges, preparing any Offering Document (defined hereafter) relating to the Bonds and qualifying the Bonds for offer and sale as provided in this Agreement, and shall reimburse the Remarketing Agent for all direct out-of-pocket expenses incurred by it under this Agreement, including reasonable counsel fees and disbursements. The Remarketing Agent will not be entitled to compensation during any period after conversion of the interest rate on the Bonds to a Mode other than a Daily Rate Mode or a Weekly Rate Mode or after this Agreement is terminated (whichever is earlier), except for a pro rata portion of the fee in respect of the quarter in which the conversion or termination occurs. Any fee due but unpaid upon the termination of this Agreement shall be payable by the Authority upon termination. The parties anticipate that separate arrangements will be made for the remarketing of Bonds converted to a Mode other than a Daily Rate Mode or a Weekly Rate Mode.

4. **Certain Agreements of the Authority.** The Authority agrees with the Remarketing Agent as follows:

(a) The Authority will, at its expense, furnish the Remarketing Agent such number of copies of the Official Statement, related to the Bonds, as amended and supplemented, or any other similar offering document or other disclosure or marketing materials prepared and furnished by the Authority (herein collectively, the **"Offering Document"**) and all certificates, opinions and other information with respect to the Bonds as the Remarketing Agent may from time to time reasonably request, and will furnish the Remarketing Agent, as may be necessary to effectively remarket the Bonds, copies of all reports and financial statements relating to the financial affairs and condition of the Authority promptly after they are available and such additional information concerning the operations and financial condition of the Authority or concerning the Bonds as the Remarketing Agent may from time to time reasonably request. If any event occurs as a result of which the Offering Document, as then amended or supplemented, would include an untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Authority will prior to the remarketing of any of the Bonds amend or supplement the Offering Document to correct such statement or supply such omitted fact; *provided, however*, that no such amendment or supplement will be made prior to allowing the Remarketing Agent a reasonable opportunity to review it. The Authority will furnish the Remarketing Agent such number of copies of the Offering Document, as so amended, or such supplement as the Remarketing Agent may reasonably request. If an Offering Document is not supplied as required by the foregoing, the Remarketing Agent's obligation to remarket the Bonds pursuant to the Indenture and under this Agreement will be suspended until such time as an Offering Document satisfactory to the Remarketing Agent and its counsel is supplied. In the event of such suspension, the Remarketing Agent will continue to determine and give notice of the interest rates on the Bonds as required by the Indenture.

(b) The Authority will prior to the remarketing of any of the Bonds notify the Remarketing Agent by telephone (which shall promptly be confirmed in writing) of (1) any fact or occurrence as a result of which the Offering Document would be or become misleading in any material respect or any representation or warranty of the Authority would become

Remarketing Agreement            4

false, (2) any material adverse change in the financial condition or general affairs of the Authority or of the Bond Insurer or Bank of which the Authority has been notified in writing by the Bond Insurer or the Bank, as applicable, (3) any reduction, or any suggestion by any rating agency maintaining a rating on the Bonds that it is considering a possible reduction, in the rating of the Bonds below the rating that is in effect on the date of this Agreement and of which the Authority is aware, (4) any replacement of the Trustee under the Indenture, (5) any event of default under the Indenture or any event that, with notice or lapse of time or both, would constitute such an event of default, and (6) any change in the Mode of any of the Bonds.

Notwithstanding the foregoing, the Remarketing Agent shall be deemed to have notice of any annual filings made by the Authority with any nationally recognized municipal securities repository with respect to the Bonds, if any.

(c) The Authority will take all steps reasonably requested by the Remarketing Agent that the Remarketing Agent or its counsel may consider necessary or desirable (1) to register the sale of the Bonds by the Remarketing Agent under any applicable federal or state securities law, and (2) to enable the Remarketing Agent to establish a "due diligence" defense to any action commenced against the Remarketing Agent in respect of any disclosure statement and any documents related thereto.

(d) The Authority, at the Authority's expense, shall take all steps reasonably requested by the Remarketing Agent to enable the Remarketing Agent to comply with the requirements, if any, as applicable to the Bonds, of Rule 15c2-12, as promulgated and amended from time to time by the Securities and Exchange Commission under the Securities Exchange Act of 1934, as amended (**"Rule 15c2-12"**).

(e) The Authority will furnish such information, execute such instruments and take such other action not inconsistent with law in cooperation with the Remarketing Agent as the Remarketing Agent may reasonably request (1) to qualify the Bonds for offer and sale under the Blue Sky or other securities laws and regulations of such states and other jurisdictions of the United States as the Remarketing Agent may designate, and (2) to determine the eligibility of the Bonds for investment under the laws of such states and other jurisdictions, and will use its best efforts to continue such qualifications in effect until the termination of this Agreement; provided, however, that the Authority shall not be required to execute a general or special consent to service of process or qualify to do business in connection with any such qualification or determination in any jurisdiction.

5. **Indemnification.**

(a) The Authority agrees to indemnify and hold harmless the Remarketing Agent, and each person who controls the Remarketing Agent within the meaning of Section 15 of the Securities Act of 1933, as amended (the **"1933 Act"**), from and against any and all losses, claims, damages, liabilities or expenses caused by (1) the failure to register any security under the 1933 Act or to qualify any indenture under the Trust Indenture Act of 1939, as amended, in connection with the remarketing of the Bonds, or (2) any untrue statement or alleged untrue statement of a material fact related to the Authority, the Bonds or the application of the proceeds of the Bonds contained in the Offering Document used in connection with the remarketing of the Bonds, or in any amendment thereof or

supplement thereto, or caused by the omission or alleged omission to state therein a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading; except insofar as such losses, claims, damages or liabilities are caused by any such untrue statement or omission or alleged untrue statement or omission based upon information furnished by the Remarketing Agent expressly for use therein or arising from the remarketing of the Bonds by the Remarketing Agent to any person, if a copy of the Offering Document shall not have been given or sent to such person at or prior to the confirmation of the sale of such Bonds, or in the case of misconduct or negligence of the Remarketing Agent or such other indemnified person in the performance of its or their duties hereunder, including any liability to which any of them may become subject under any federal or state statutory law or regulation or at common law or otherwise.

(b) In case any action is brought against the Remarketing Agent or any person controlling the Remarketing Agent, in respect of which indemnity may be sought against the Authority, the Remarketing Agent shall, as a condition to the above indemnity, promptly notify the Authority in writing, and the Authority shall assume the defense thereof, including the employment of counsel and payment of all expenses. The Remarketing Agent or any controlling person shall have the right to employ separate counsel in the action and participate in the defense thereof, but the fees and expenses of the separate counsel shall be at the expense of the Remarketing Agent or the controlling person, as the case may be, unless (1) the employment of such counsel has been specifically authorized by the Authority in writing prior to the employment of the counsel, or (2) the named parties to the action (including any impleaded parties) included both the Remarketing Agent or the controlling person and the Authority, and the Remarketing Agent or controlling person, as the case may be, is advised by counsel that there may be one or more legal defenses available to it that are different from or additional to those available to the Authority and that joint representation may be inappropriate under professional standards, in which case the Authority shall not have the right to assume the defense of such action on behalf of the Remarketing Agent or the controlling person, as the case may be, it being understood, however, that the Authority shall not, in connection with any one such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm for the Remarketing Agent (including controlling persons), and any firm shall be designated in writing by the Remarketing Agent with the prior approval of the Authority, which approval shall not be unreasonably withheld. The Authority shall not be liable for any settlement of any action effected without its written consent, but if settled with the prior written consent of the Authority, or if there is a final judgment for the plaintiff in any action, the Authority agrees to indemnify and hold harmless the Remarketing Agent and any controlling person from and against any loss or liability by reason of the settlement or judgment, subject to the limitations contained in **Section 5** hereof.

(c) The Remarketing Agent agrees to indemnify and hold harmless the Authority, its members and officers and any person controlling the Authority to the same extent as the indemnity from the Authority to the Remarketing Agent set forth in subsection 5(a)(2), but only with reference to information furnished by the Remarketing Agent in writing for use in the Offering Document. In case any action is brought against the Authority, any of its members or any officer or controlling person based on the Offering Document and in

Remarketing Agreement 6

respect of which indemnity may be sought against the Remarketing Agent, the Remarketing Agent shall have the rights and duties given to the Authority, and the Authority, its members or any such officer or controlling persons shall have the rights and duties given to the Remarketing Agent, by subsection 5(b).

(d) If recovery is not available under the foregoing indemnification provisions of subsection 5(a) or 5(c) for any reason other than as specified therein, the parties entitled to indemnification by the terms thereof shall be entitled to contribution for their liabilities and expenses. The Authority and the Remarketing Agent agree that it would not be equitable if the amount of contribution were determined by pro rata or per capita allocation. Neither the Remarketing Agent nor any person controlling the Remarketing Agent shall be obligated to make contribution hereunder in an amount that, in the aggregate, exceeds the total remarketing fees paid to the Remarketing Agent under this Agreement, less the aggregate amount of any damages that the Remarketing Agent and its controlling persons have otherwise been required to pay in respect of the same claim or any substantially similar claim.

6. **Removal or Resignation.** The Remarketing Agent may at any time resign and, except as otherwise set forth in **Section 7** hereof, be discharged of its duties and obligations under this Agreement by giving at least **30 days'** prior written notice to the Authority, the Trustee, the Bond Insurer and the Bank. The Remarketing Agent shall resign immediately at any time that it shall cease to be eligible in accordance with **Section 404** of the Supplemental. The Remarketing Agent may be removed at any time by the Authority by a written notice signed by the Authority and delivered at least 30 days prior to the date of such removal to the Remarketing Agent, the Trustee, the Bond Insurer and the Bank.

In the event of the resignation or removal of the Remarketing Agent, and the appointment of a successor remarketing agent pursuant to **Section 404** of the Supplemental, the retiring Remarketing Agent shall pay over, assign and deliver any monies and Bonds held by it in such capacity to its successor.

7. **Termination.** This Agreement will terminate upon the earlier of (a) the effective date of the resignation or removal of the Remarketing Agent in accordance with **Section 6** hereof, (b) the payment in full of the principal of and interest on the Bonds, and (c) the close of business on the conversion date to a Mode other than a Daily Rate Mode or a Weekly Rate Mode under the Indenture. Following such termination, the parties hereto shall remain liable for liabilities or obligations incurred prior to termination.

8. **Amendments and Waivers.** Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and signed by the Authority and the Remarketing Agent. No failure or delay by the Remarketing Agent in exercising any right, power or privilege hereunder or under the Bonds shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

9. **Notices.** Unless otherwise provided herein, all notices, certificates, requests or other communications under this Agreement shall be deemed given when hand delivered in writing or sent by facsimile transmission or first class mail, postage prepaid, addressed as follows:

(a)   To the Authority:

   Higher Education Loan Authority of the State of Missouri
   633 Spirit Drive
   Chesterfield, Missouri 63005-1243
   Attn: Treasurer
   cc: Chief Financial Officer
   Telephone: (636) 532-0600
   Telecopier (CFO): (636) 530-9438
   Telecopier (CEO): (636) 532-4075

(b)   To the Remarketing Agent:

   A.G. Edwards & Sons, Inc.
   One North Jefferson Avenue
   St. Louis, Missouri 63103
   Attention: Bond Dept. – Short-Term Desk
   Fax Number: 314/955-2199

(c)   To the Trustee:

   Wells Fargo Bank, N.A.
   One Ward Parkway, Suite 330
   Kansas City, Missouri 64112
   Attention: Corporate Trust Department
   Fax Number: 816/753-5311

(d)   To the Bank:

   DEPFA BANK plc
   New York Branch
   623 Fifth Avenue, 22nd Floor
   New York, New York 10022
   Attention: Loan Administration
   Fax Number: 917/286-2050

Each of the above parties may, by written notice given hereunder to the others, designate any further or different addresses to which, or means by which, subsequent notices, certificates, requests or other communications shall be sent.

**10.   Binding Effect.** This Agreement will inure to the benefit of and be binding upon the Authority and the Remarketing Agent and their respective successors and assigns, and will not confer any rights upon any other person, partnership, associations or corporation other than the Bank and persons, if any, controlling the Remarketing Agent within the meaning of the 1933 Act. The terms "successors" and "assigns" shall not include any purchaser of any of the Bonds merely because of such purchase. The obligations of the respective parties hereto may not be assigned or delegated to any other person without the consent of the other party hereto and prior written notice to the Bank. The Bank shall be deemed a third party beneficiary of the covenants and agreements contained herein.

11. **Severability.** If any provisions of this Agreement shall be held or deemed to be or shall, in fact, be invalid, inoperative or unenforceable, such circumstances shall not have the effect of rendering any other provision or provisions of this Agreement invalid, inoperative or unenforceable to any extent whatever.

12. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.

13. **Authorization of Electronic Transaction.** The parties agree that the transaction described herein may be conducted and related documents may be stored by electronic means.

14. **Authority's Obligations.** Notwithstanding any other provision of this Agreement to the contrary, the Authority's payment and indemnity obligations hereunder, of any nature whatsoever, are special, limited obligations of the Authority payable solely from sources available under the Indenture, and in the order of priority as set forth in the Indenture, all in accordance with the terms of the Indenture. Neither the Authority nor any of its members or officers shall be individually or personally liable under this Agreement. None of the obligations of the Authority pursuant to this Agreement shall constitute a debt of the State of Missouri, or any political subdivision thereof, within the meaning of the constitution or statutes of the State of Missouri, and shall not constitute a pledge of the full faith and credit of the State of Missouri or of any political subdivision thereof, but shall be payable solely from the sources available under the Indenture. The obligations of the Authority pursuant to this Agreement shall not, directly, indirectly or contingently, obligate the State of Missouri, or any political subdivision thereof, to levy any form of taxation therefor or to make any appropriation for their payment.

15. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri.

[The remainder of this page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this Remarketing Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

HIGHER EDUCATION LOAN AUTHORITY
OF THE STATE OF MISSOURI

By: /s/ Karen M. [signature]
Title: Chairman

By: /s/ Michael [signature]
Title: Executive Director

A.G. EDWARDS & SONS, INC.

By: _____
Title: _____

S-1

**IN WITNESS WHEREOF**, the parties hereto have caused this Remarketing Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

HIGHER EDUCATION LOAN AUTHORITY
OF THE STATE OF MISSOURI

By: _____
Title: Chairman

By: _____
Title: Executive Director

A.G. EDWARDS & SONS, INC.

By: *Sondra M Denk*
Title: *Managing Director*

S-1