UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO BANK, N.A.; WACHOVIA BANK, N.A. n/k/a WELLS FARGO BANK, N.A.; and WACHOVIA SECURITIES, LLC, n/k/a WELLS FARGO ADVISORS, LLC, <br><br> Defendants. <br><br> WACHOVIA BANK, N.A. n/k/a WELLS FARGO BANK, N.A.; and WACHOVIA SECURITIES, LLC n/k/a WELLS FARGO ADVISORS, LLC, <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> DEPFA BANK PLC, <br><br> Third-Party Defendant. | Case No. 4:10-CV-01230 JAR |

## WACHOVIA BANK AND WACHOVIA SECURITIES' MEMORANDUM IN OPPOSITION TO DEPFA'S MOTION TO DISMISS

Wachovia Bank and Wachovia Securities (collectively, "Wachovia") assert a claim for contribution against DEPFA, based on DEPFA's negligence. DEPFA relies on an exculpatory clause—contained in a contract to which Wachovia is not a party—in support of its assertion that any tort claim against DEPFA is barred. DEPFA is mistaken, for three reasons:

- Because Wachovia was not a party to the contract containing the exculpatory clause, the exculpatory clause cannot apply.

- Even if it did somehow apply, the exculpatory clause does not exonerate DEPFA of its gross negligence.

- This Court previously held, in the context of Wachovia's motion to dismiss MOHELA's claims, that a contractual relationship does <u>not</u> preclude a claim in tort for damages even where the claim is based on that contractual relationship.

DEPFA also contends that this Court lacks personal jurisdiction over DEPFA. DEPFA is again mistaken. Its tortious acts occurred in Missouri and produced consequences in Missouri, and DEPFA otherwise transacted business in Missouri. The Court should deny DEPFA's motion to dismiss.

## DISCUSSION

### I. DEPFA IS LIABLE FOR CONTRIBUTION BASED ON ITS UNTIMELY AND/OR INACCURATE NOTICE OF TERMINATION

Wachovia asserts a third-party claim against DEPFA for contribution. Relying on an exculpatory clause in a contract to which Wachovia is not a party, DEPFA argues that it has no liability to MOHELA and therefore DEPFA cannot be liable to Wachovia for contribution. To the contrary, and as discussed further below, Wachovia is not a party to the contract containing the exculpatory clause, and, even if the clause somehow applied to Wachovia, DEPFA is nevertheless liable for its gross negligence.

#### A. An Exculpatory Clause Releasing DEPFA's Liability As To MOHELA Does Not Bar Wachovia's Claim Against DEPFA

Even if an exculpatory clause relieves "tortfeasor A" of some or all direct liability with respect to an injured plaintiff, the clause does *not* bar "tortfeasor B" from seeking *contribution* from "tortfeasor A" based on "tortfeasor A's" negligence. **Sommer v. Federal Signal Corp.**, 593 N.E.2d 1365, 1372-74 (N.Y. 1992); **Franzek v. Calspan Corp.**, 78 A.D.2d 134, 140-142, 434 N.Y.S.2d 288

(N.Y. App. Div. 1980).[1]  "Although ['tortfeasor A's'] direct *liability* to [the injured plaintiff] (by virtue of the exculpatory clause) is triggered only upon gross negligence, its *duty* is to avoid ordinary negligence.  Upon breach of that duty, fairness requires that ['tortfeasor A'] contribute to the judgment in proportion to its culpability."  **Sommer**, 593 N.E.2d at 1373 (emphasis in original).  This principle is applicable especially where "tortfeasor B" is not a party to the contract containing the exculpatory clause.  **Sommer**, 593 N.E.2d at 1373-74; **Franzek**, 78 A.D.2d at 140-142.  "[I]t would be patently unfair to abrogate ['tortfeasor B's'] right to contribution based on an exculpatory clause to which they were not a party."  **Sommer**, 593 N.E.2d at 1373 (citing **Franzek**).  *Cf.* **Comp & Soft, Inc. v. AT&T Corp.**, 252 S.W.3d 189, 194 (Mo. App. 2008) (applying Missouri law, holding defendant not entitled to summary judgment based on release contained in settlement agreement to which plaintiff was not a party).

In the present case, the Standby Bond Purchase Agreements executed by DEPFA, MOHELA, and Wells Fargo Bank as trustee ("Purchase Agreements") expressly provide:

> **Promptly after the occurrence of an Automatic Termination Event, the Bank [DEPFA] shall give written notice** of the same to the Trustee, the Paying Agent, the Bond Insurer, the Authority, and the Remarketing Agent.

(Purchase Agreements, § 7.02(b)) (emphasis added).  This provision is followed by an exculpatory clause:

> … *provided*, *however*, that the Bank shall incur no liability or responsibility whatsoever by reason of its failure to give such notice….

(*Id.*)  DEPFA concedes that "Wachovia was not a party to the Purchase Agreements." (DEPFA Br., p. 9 n. 10).

---

[1] Wachovia believes that the specific issue of "tortfeasor A's" liability in contribution notwithstanding an exculpatory clause exonerating "tortfeasor A's" direct liability is an issue of first impression in Missouri.  DEPFA concedes, however, that the laws of Missouri and New York are "in accord with respect to the axiomatic principles of contribution and indemnification." (DEPFA's Br., p. 7, n. 9).

DEPFA provided notice of an alleged occurrence of an Automatic Termination Event ("Termination Notice") more than two months after the occurrence, and after the bonds at issue were sold.  (Third-Party Complaint, ¶¶ 11-16).  DEPFA accordingly failed to provide prompt notice of the alleged occurrence of an Automatic Termination Event.  (*Id.*, ¶¶ 11-18).

Even if the exculpatory clause precludes, in whole or in part, MOHELA's claim against DEPFA, the clause does *not* bar Wachovia's suit for *contribution* based on DEPFA's negligence.  *See* **Sommer**, 593 N.E.2d at 1372-74; **Franzek**, 78 A.D.2d at 140-142.  Indeed, as DEPFA admits, Wachovia was not a party to the agreements containing the exculpatory clause.  (DEPFA's Br., p. 9, n. 10).  It would be "patently unfair" to abrogate Wachovia's rights to contribution.  *See* **Sommer**, 593 N.E.2d at 1373; **Franzek,** 78 A.D.2d at 140-141.  Accordingly, the Court should deny DEPFA's motion to dismiss.

B.  **DEPFA Is Liable For Its Gross Negligence Regardless Of The Exculpatory Clause**

Even assuming (contrary to the principles discussed in the previous subsection) that the exculpatory clause does somehow apply to Wachovia's contribution claim, the clause cannot operate to exonerate DEPFA of its gross negligence.  An exculpatory clause does not and cannot preclude liability for gross negligence or willful misconduct.  **Alack v. Vic Tanny Int'l of Mo., Inc.**, 923 S.W.2d 330, 337 (Mo. 1996); **Liberty Fin. Mgt. Corp. v. Beneficial Date Proc. Corp.**, 670 S.W.2d 40, 48 (Mo. App. 1984).  "[T]here is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence." **Alack**, 923 S.W.2d at 337.  This is established public policy.  **Id.**; **Liberty Fin. Mgt. Corp.**, 670 S.W.2d at 48.  *See also* **Sommer**, 593 N.E.2d at 1370-71 (applying New York law and public policy, holding exculpatory clauses do not insulate party from damages caused by gross negligence).

DEPFA relies on the exculpatory clause, arguing that the clause completely exonerated DEPFA of all future liability.  (DEPFA's Br., pp. 3-4, 8-9).  DEPFA ignores that the exculpatory

3835374                                  4

clause does not exonerate DEPFA of its gross negligence. See **Alack**, 923 S.W.2d at 337; **Liberty Fin. Mgt. Corp.**, 670 S.W.2d at 48. Accordingly, DEPFA is liable, at the least, for its gross negligence. The Court should therefore deny DEPFA's motion to dismiss.

### C. The Purchase Agreements Expressly Contemplate A Claim For Gross Negligence

Moreover, the Purchase Agreements expressly contemplate a claim of "gross negligence" against DEPFA. Section 8.11(b) of the Purchase Agreements provides that MOHELA is generally obligated to indemnify DEPFA, except for liabilities caused by DEPFA's "willful misconduct or gross negligence."

DEPFA argues that its right to seek indemnity against MOHELA under Section 8.11(b) demonstrates the "absurdity" of Wachovia's third-party complaint against DEPFA—apparently because, DEPFA maintains, liability would be circuitous (MOHELA asserts a claim against Wachovia, Wachovia asserts a claim against DEPFA, and DEPFA asserts a claim against MOHELA). (DEPFA's B., p. 11, n. 12). However, under the express terms of Section 8.11(b), MOHELA is <u>not</u> obligated to indemnify DEPFA for "gross negligence." Liability is not circuitous—it ends with DEPFA. There is nothing absurd about holding DEPFA responsible for its own gross negligence, and the Purchase Agreements specifically contemplate this.

### D. The Cases DEPFA Relies On Are Inapposite

In asserting that DEPFA has no liability to MOHELA, DEPFA relies on two cases that are inapplicable—**Wentzville Park Assocs., L.P. v. American Ca. Ins. Co. of Reading**, 263 S.W.3d 736 (Mo. App. 2008), and **Miles v. Rich**, 347 S.W.3d 477 (Mo. App. 2011). (DEPFA's Br., p. 9). *Wentzville* involved the interpretation of insurance-policy language in two seemingly competing insurance policies both of which purported to cover liability not covered by "other" policies. **Wentzville Park Assocs.**, 263 S.W.3d at 738-743. This has nothing to do with the present issue.

Wachovia's claim for contribution does not involve insurance, competing insurance policy language, or any other competing contractual language relevant here.

*Miles* is likewise inapposite. In that case, a dog-bite victim sued the dog owner for personal injury. **Miles**, 347 S.W.3d at 479. The dog owner sought contribution from the animal shelter from which the owner had adopted the dog. **Id.** The court held the dog owner was not entitled to contribution because the animal shelter did not owe a duty to the dog-bite victim. **Id.** at 481-84. This has no application here. DEPFA cannot seriously dispute that it owed a duty to MOHELA—at the least, a duty to not commit gross negligence.

## II. THIS COURT PREVIOUSLY REJECTED THE SAME ARGUMENTS PROFFERED HERE BY DEPFA

Wachovia moved to dismiss on the same basis that DEPFA asserts now—*i.e.*, that a contractual relationship precludes a claim for damages in tort where the claim is based on that contractual relationship. (December 2011 Order, pp. 9, 11-12; DEPFA's Br., p. 10). The Court denied Wachovia's motion in the Court's December 2011 Order.

Specifically, in its motion to dismiss, Wachovia pointed to language in the Remarketing Agreements that limited Wachovia's liability to "gross negligence or willful misconduct"—exactly the scope of DEPFA's liability under the Purchase Agreements. (*See*, *e.g.*, Wachovia's Reply in further support of its Motion to Dismiss [Doc. 53], pp. 1-4). Wachovia argued that the "gross negligence or willful misconduct" language merely establishes the scope of Wachovia's liability for <u>breach of contract</u> and does not establish the basis for an independent <u>tort</u> such as "Negligence." (*Id.*)

The Court rejected this argument. (December 2011 Order, pp. 15-17). The Court held that MOHELA's tort claims—including its claim for "Negligence"—survive a motion to dismiss and that "further development of the record" is necessary before the claims can be resolved. (December 2011 Order, p. 16). Likewise, Wachovia's claims against DEPFA should not be dismissed and

further development of the record is necessary before these claims can be resolved.  Indeed, in order to dismiss Wachovia's claims against DEPFA, the Court would have to revisit its December 2011 Order and also dismiss MOHELA's claims against Wachovia.

### III. THE ALLEGED ACTS OF WACHOVIA AND DEPFA RESULTED IN THE SAME ALLEGED, INDIVISIBLE INJURY TO MOHELA

To state a claim for contribution, a third-party plaintiff must allege that it is jointly liable with the third-party defendant—in other words, that the acts of the two joint tortfeasors "coalesced in a single transaction of facts to cause an indivisible injury." **Gibson v. City of St. Louis**, 349 S.W.3d 460, 466 (Mo. App. 2011) (quoting **Stevenson v. Aquila Foreign Qualifications Corp.**, 326 S.W.3d 920, 926 (Mo. App. 2010)).  The tortfeasors' respective tortious acts need not be the same— "[i]n fact, all joint tortfeasors necessarily commit 'separate' torts." **Stevenson**, 326 S.W.3d at 926.

Wachovia alleges the requisite joint liability.  The alleged acts of Wachovia and the acts of DEPFA coalesced in a single transaction of facts to cause an indivisible, alleged injury to MOHELA.  (Third-Party Complaint, ¶¶ 12-20, 25-26).  Wachovia and DEPFA's respective acts were not the same—Wachovia acted (or allegedly acted)[2] in its role as remarketing agent, while DEPFA acted in its role as liquidity provider—yet their acts resulted in the same alleged, indivisible injury.

DEPFA erroneously asserts that Wachovia and DEPFA must owe the *same duty* to MOHELA, and must have committed the same tort, in order for Wachovia and DEPFA to be joint tortfeasors.  DEPFA misconstrues the language of **McNeill Trucking Co., Inc. v. Missouri State H'way & Transp. Comm'n**, 35 S.W.3d 846 (Mo. 2001) and **Merchants Bonding Co. v. Noland Law Office**, No. 2:10-CV-040985-NKL, 2010 U.S. Dist. LEXIS 92525 (W.D. Mo. Sept. 7, 2010).

---

[2] Wachovia Bank was the remarketing agent and acted in its role as remarketing agent.  Wachovia Securities was not the remarketing agent and did not act as remarketing agent.  Nevertheless, MOHELA alleges that Wachovia Bank and Wachovia Securities both became and/or acted as remarketing agent.  (MOHELA's First Amended Complaint, ¶ 12; Third-Party Complaint, ¶ 19).

In those cases, the courts held, "What is key is that the action for contribution 'accrues from the existence of a *joint obligation on a liability shared by tortfeasors.*'" **McNeill Trucking Co., Inc.**, 35 S.W.3d at 849; **Merchants Bonding Co.**, 2010 U.S. Dist. LEXIS 92525, at *7. (emphasis added).  DEPFA contends that "joint obligation on a liability" means that joint tortfeasors must owe the *same legal duty*—that DEPFA and Wachovia must owe the same obligations to MOHELA and committed the same tort.  (DEPFA's Br., pp. 8-9).

Nothing in these cases or elsewhere supports DEPFA's contention.  *See*, *generally*, **McNeill Trucking Co., Inc.**, 35 S.W.3d 846; **Merchants Bonding Co.**, 2010 U.S. Dist. LEXIS 92525.  To the contrary, "joint obligation on a liability" simply means that the joint tortfeasors are jointly liable to the plaintiff *for an indivisible injury*.  *See* **Gibson**, 349 S.W.3d at 466 (party seeking contribution must allege "indivisible injury"); **Stevenson**, 326 S.W.3d at 926 (same).  Indeed, joint tortfeasors necessarily owe *separate* duties and commit *separate* torts.  *See* **Stevenson**, 326 S.W.3d at 926 ("all joint tortfeasors necessarily commit separate torts").  Wachovia properly alleges an indivisible injury.

IV.     **THIS COURT HAS JURISDICTION OVER DEPFA**

As further indication that DEPFA is grasping at straws, DEPFA argues alternatively that the Court lacks jurisdiction over it.  To the contrary, this Court has jurisdiction.  It is telling that DEPFA does not dispute core facts establishing jurisdiction—*e.g.*, DEPFA's service of the untimely Termination Notice (DEPFA's Br., pp. 4-5)—and offers no additional materials into the record, other than agreements that further demonstrate that this Court <u>does</u> have jurisdiction over DEPFA (DEPFA's Ex. 1).

Under Eighth Circuit law, a complaint should not be dismissed for lack of personal jurisdiction if there is **any** genuine issue as to any fact material to the question.  **Radaszewski v. Telecom Corp.**, 981 F.2d 305, 309 (8th Cir. 1992).  To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction.

3835374                                                              8

***Miller v. Nippon Carbon Co. Ltd.***, 528 F.3d 1087, 1090 (8th Cir. 2008); ***Hoffman v. Empire Machinery & Tools Ltd.***, No. Case No. 4:10-CV-00832-NKL, 2011 WL 1769769, *2 (W.D. Mo. May 9, 2011).  *See also* ***Epps v. Stuart Information Corp.***, 327 F.3d 642, 647 (8th Cir. 2003) (plaintiff need not prove jurisdiction "by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.").   Wachovia has made the necessary prima facie showing.

In analyzing a challenge to personal jurisdiction, the Court undertakes a two-step inquiry: (1) whether cause of action arose out of an activity covered by Missouri's Long-Arm statute (Mo. Rev. Stat. § 506.500), and, if so, (2) whether the exercise of personal jurisdiction comports with due process requirements.  ***Johnson v. Arden***, 614 F.3d 785, 794 (8th Cir. 2010); ***Angoff v. Marion A. Allen, Inc.***, 39 S.W.3d 483, 486 (Mo. 2001).  Here, both requirements are easily met.

### A. DEPFA's Conduct Satisfied Missouri's Long-Arm Statute

Missouri's Long-Arm statute provides, in relevant part:

> 1.    Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
>
>> (1)    The transaction of any business within this state;
>>
>> (2)    The making of any contract within this state;
>>
>> (3)    The commission of a tortious act within this state….

Mo. Rev. Stat. § 506.500(1-3).  Satisfaction of any one of these subparts is sufficient to confer jurisdiction.  ***Id.***  Missouri courts consistently construe the Long-Arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause.  *See*, *e.g.*, ***NP Sterling Labs, Inc. v. Emergent Indus. Solutions, Inc.***, No. 4:08-CV-1770-MLM, 2009 WL 36404, *2 (E.D. Mo. Jan. 6, 2009); ***State ex rel. Newport v. Wiesman***, 627 S.W.2d 874, 876 (Mo. banc. 1982).

Although Wachovia bears the burden of establishing that the Court has jurisdiction over DEPFA, the Court must view the factual allegations in the light most favorable to Wachovia and must resolve all factual issues in its favor. **Allen v. ASRC Commc'n**, No. 4:08-CV-1575-HEA, 2010 WL 1404179, *1 (E.D. Mo. Apr. 8, 2010), citing **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007); **Stavrides v. Zerjav**, 848 S.W.2d 523, 527 (Mo. App. 1993) (petition contained prime facie evidence relating to jurisdictional issues). The allegations of Wachovia's Third-Party Complaint establish that the requirements of Missouri's Long-Arm statute are satisfied because, *inter alia,* DEPFA: (1) committed a violation producing consequences in Missouri, (2) made a contract in Missouri, and (3) transacted business in Missouri. Standing alone, any one of DEPFA's contacts with Missouri easily satisfies Missouri's Long-Arm statute. Taken collectively, there is no doubt that the exercise of personal jurisdiction over DEPFA is appropriate.

  (1) <u>DEPFA Committed A Tortious Act In Missouri And Regardless of Where The Tortious Act Was Committed It Produced Negative Consequences In Missouri</u>

Jurisdiction is based on DEPFA's commission of a tort in this state. Mo. Rev. Stat. § 506.500.3. DEPFA committed a tortious act in Missouri—delivery of the untimely Termination Notice—and regardless of where the act occurred, it produced negative consequences in Missouri. Under Missouri law, the tortious-act component of the Missouri Long-Arm statute, Mo. Rev. Stat. § 506.500.3, applies to "extra-territorial acts that produce consequences in the state." **Bryant v. Smith Interior Design Group, Inc.**, 310 S.W.3d 227, 232 (Mo. 2010), citing **Longshore v. Norville**, 93 S.W.3d 746, 752 (Mo. App. 2002); **Schwartz & Assocs. v. Elite Line, Inc.**, 751 F. Supp. 1366, 1369 (E.D.Mo. 1990) (allegation of extra-territorial act that yields consequences in state is "sufficient to support the exercise of personal jurisdiction under the Missouri long-arm statute"). In **Peabody Holding Co. v. Costain Group PLC**, 808 F. Supp. 1425, 1433-34 (E.D. Mo. 1992), for instance, the Court held that the "commission of a tortious act" provision of the long-arm statute permitted the court to exert jurisdiction over a non-resident defendant where the only basis

for jurisdiction was the commission of an extra-territorial act that allegedly produced an effect in Missouri.  **Id.**

Here, Wachovia alleges a tortious act—delivery of an untimely and/inaccurate Termination Notice—which caused the alleged damages to MOHELA, a Missouri resident, in Missouri.  (Third-Party Complaint,  ¶¶ 14-26, Exhibit A.)  Moreover, DEPFA voluntarily delivered the Termination Notice *into Missouri to Missouri residents*.  *Id.*  DEPFA's alleged tortious conduct manifestly had "consequences in [Missouri]."  **Bryant**, 310 S.W.3d at 232.

DEPFA makes a straw-man argument that a "failure to act is not transacting business" within Missouri, and culls case quotations out of context to erroneously argue that Missouri courts require "some activity within the state" beyond the activity DEPFA engaged in.  (DEPFA's Br., p. 13.)  Among other acts, DEPFA's affirmative act of sending the Termination Notice into Missouri constituted a tortious act.  (Third-Party Complaint, ¶¶ 14-26, Exhibit A).  Thus, **William Ranni Assocs. v. Hartenbach**, 742 S.W.2d 134, 140-141 (Mo. banc 1987), which is cited by DEPFA and concerns only passive *inaction*, is not applicable here.  **Id**.  Moreover, *William Ranni Assoc.*'s holding is based on that court's determination in that case that the failure to perform a contracted obligation is not an independent tort.  **Id.** at 140.  As discussed above, this Court, in its December 2011 Order, expressly rejected that principle in this case, for purposes of a motion to dismiss.  (December 2011 Order, pp. 15-17).

Yet, even if the Third-Party Complaint were construed in DEPFA's favor (which this Court should not do in this context, **Allen**, 2010 WL 1404179 at *1) to limit the alleged violation to DEPFA's *failure* to act (which DEPFA argues "occurred" outside of Missouri), the violation nevertheless "caus[ed] consequences in [Missouri]."  **Wilansk**, 900 F. Supp. at 1159 (E.D. Mo. 1995).  Thus, personal jurisdiction is proper because DEPFA committed a violation that produced negative consequences in Missouri.

(2) <u>DEPFA Made A Contract In Missouri</u>

Alternatively, jurisdiction is based on the making of a contract in this state. Mo. Rev. Stat. § 506.500.2. Wachovia's claim is based on DEPFA's conduct in connection with the terms and provisions of the Purchase Agreements. (Third-Party Complaint, ¶¶ 10-11). It is clear from the terms of the Purchase Agreements that they were contracts made between DEPFA and *two* Missouri-located entities, MOHELA and Wells Fargo. *See* Purchase Agreements, p. 33 (providing address for Wells Fargo in Kansas City, Missouri; and for MOHELA in Chesterfield, Missouri). The making of a contract in Missouri satisfies the Missouri long-arm requirements. **Wilson Tool & Die, Inc. v. TBDN-Tennessee Co.**, 237 S.W.3d 611, 615-616 (Mo. App. 2007). A contract is made in Missouri when acceptance of the contract occurs in Missouri. **Id.** at 615. Here, the date of the contract and the signatures of the parties show that the Purchase Agreements were accepted by all parties contemporaneously. (Purchase Agreements, p. 1; signature pages). *See also* **Portnoy v. Defiance, Inc.**, 951 F.2d 169, 171 (8th Cir. 1991) (contract made in Missouri sufficient to confer jurisdiction under Missouri Long-Arm Act, regardless of whether defendant also engaged in other transaction of business). Accordingly, personal jurisdiction over DEPFA is appropriate for this additional reason.

(3) <u>DEPFA Transacted Business In Missouri</u>

Jurisdiction is also, alternatively, based on the transaction of any business in this state. Mo. Rev. Stat. § 506.500.1. "For the purposes of the [Long-Arm] statute, the 'transaction of any business' is construed broadly, and may consist of a single transaction, if the transaction is that upon which the plaintiff is suing." **State ex rel. Nixon v. Beer Nuts, Ltd.**, 29 S.W.3d 828, 834 (Mo. App. 2000). Moreover, the bonds at issue were issued by MOHELA, a Missouri resident. (First Amended Complaint, ¶ 17). Under the Purchase Agreements, DEPFA agreed to provide liquidity for and to purchase these bonds under certain circumstances. Under Missouri's liberal

interpretation of § 506.500, **K-V Pharm. Co. v. J. Uriach & CIA, S.A.**, 648 F.3d 588, 592 (8th Cir. 2011), this fact also confers personal jurisdiction over DEPFA. **Id.**; *see also* **Precision Const. Co. v. J.A. Slattery Co., Inc.,** 765 F.2d 114 (8th Cir. 1985) (transaction of business prong of § 506.500 construed broadly).

DEPFA cites to **Helicopteros Nacionales De Colom. V. Hall**, 466 U.S. 408, 418 (1984) for the proposition that "mere purchases … are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." (DEPFA's Br., p. 14). Here, there is much more than "mere purchases" tying DEPFA to Missouri, and the bond purchases certainly were at the least "related" to Wachovia's action against DEPFA. Thus, **Hall** is inapplicable.

So too is **Stavrides v. Zerjav**, 848 S.W.2d 523, 529 (Mo. App. 1993), which DEPFA also cites, on this precise point. In **Stavrides**, it was crucial to the Court's holding that "the *only* act [the defendant] took in relation to the [note at issue] which had *any connection* with Missouri was mailing a letter … advising [a Missouri resident] that he should send his payments to [the defendant]." **Id.** at 529 (emphasis added). Here, there is much more. In addition to agreeing to provide liquidity for Missouri-issued bonds and to purchase the bonds from a Missouri-based issuer, DEPFA, for example, acted to produce negative consequences in Missouri (delivery of the untimely Termination Notice) and made the relevant contracts in Missouri (the Purchase Agreements). Accordingly, on several independent bases set forth in the Long-Arm statute (Mo. Rev. Stat. § 506.600(1-3)), this Court has personal jurisdiction over DEPFA.

### B. DEPFA Had Minimum Contact With Missouri To Satisfy Due Process

Once Long-Arm jurisdiction is established, as long as the defendant has certain minimum contacts with the state so that asserting jurisdiction over it does not offend traditional notions of fair play and substantial justice, jurisdiction is proper. **Aldein v. Asfoor**, 213 S.W.3d 213, 216 (Mo. Ct.

App. 2007); **Farris v. Boyke**, 936 S.W.2d 197, 201 (Mo. App. 1996).  So long as DEPFA's contact with Missouri is such that it could "reasonably anticipate being haled into court there," jurisdiction will lie.  **Aldein**, 213 S.W.3d at 216.

The satisfaction of due process concerns is easily met under the factors set forth in **Aldein**, which are as follows: (1) the nature and quality of defendant's contacts with Missouri; (2) the quantity of those contacts; (3) the relationship of the cause of action to those contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.  **Id.**  The first three factors are of primary importance and the last two are of secondary importance.  **Id.**

Here, DEPFA voluntarily subjected itself to this Court's jurisdiction by committing a tortious act that produced consequences in Missouri, by making a contract in Missouri, and by transacting business in Missouri.  The nature and quality of DEPFA's contacts with Missouri are thus substantial, as is the quantity of those contacts, particularly in regard to DEPFA's bond purchasing.  The quality and the quantity of DEPFA's contacts with Missouri therefore weigh heavily in favor of the exercise of personal jurisdiction over DEPFA.

Moreover, all of the aforementioned contacts that DEPFA had with Missouri are directly related to Wachovia's claim.  The claim is based upon, *inter alia,* DEPFA's failure to perform duties set forth in the Purchase Agreements (which were made in Missouri) in relation to the Termination Notice sent into Missouri to Missouri residents.  Regarding Missouri's interest in providing a forum to hear Wachovia's claims against DEPFA, although this factor is of less importance than the first three, it is still in Wachovia's favor.  **Aldein**, 213 S.W.3d at 216.  Surely it is in this state's interest to hear cases involving violations producing substantial effects in Missouri and related to a Missouri-made contract, notices that DEPFA delivered to Missouri residents, and bonds issued by a Missouri

entity.  Finally, this forum is more convenient to the parties than any alternative DEPFA could suggest, as a substantial portion of evidence and related individuals are located in Missouri.

In short, DEPFA voluntarily subjected itself to this Court's jurisdiction by making a Missouri contract, transacting business in Missouri, and committing a tortious act that produced consequences in Missouri.  In doing so, DEPFA had to anticipate that any lawsuits related to such events would be filed here.  It is proper that it be required to answer for its misconduct in Missouri.

**V.**      **CONCLUSION**

Wachovia states a third-party claim against DEPFA.  The exculpatory clause—upon which DEPFA relies—does not apply to Wachovia.  Regardless, the exculpatory clause does not exonerate DEPFA of its gross negligence.  Furthermore, this Court has personal jurisdiction over DEPFA.  DEPFA's tortious acts occurred in Missouri and had negative consequences in Missouri, and DEPFA otherwise transacted business in Missouri.  Accordingly, the Court should deny DEPFA's motion to dismiss.

Dated: April 5, 2012                                              Respectfully submitted,

                                                                                     BRYAN CAVE LLP


                                                                                     By: /s/ Adam S. Hochschild
                                                                                         Jeffrey J. Kalinowski, E.D. Mo. #29926MO
                                                                                         jeff.kalinowski@bryancave.com
                                                                                         Adam S. Hochschild, E.D. Mo. #52282MO
                                                                                         adam.hochschild@bryancave.com
                                                                                         One Metropolitan Square
                                                                                         211 North Broadway, Suite 3600
                                                                                         St. Louis, Missouri 63102-2750
                                                                                         (314) 259-2000 – Phone
                                                                                         (314) 259-2020 – Fax

                                                                                     *Attorneys for Defendants / Third-Party Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5th day of April, 2012, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which I understand will send notification of such filing to the following:

Rudolph A. Telscher, Jr.
Harness Dickey & Pierce, PLC
7700 Bonhomme, Suite 400
St. Louis, MO 63105
*Counsel for Third-Party Defendant*

Michael A. Hanin
Mark P. Ressler
Henry B. Brownstein
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
*Counsel for Third-Party Defendant*

John Gianoulakis
Kevin Sullivan
Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP
1 N. Brentwood Blvd., Suite 800
St. Louis, MO 63105
*Counsel for Plaintiff*

/s/ Adam S. Hochschild