UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) )  No. 4:10-CV-1230-JAR |
| WELLS FARGO BANK, N.A., et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Higher Education Loan Authority of the State of Missouri's ("MOHELA") Motion to Dismiss Counterclaim of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") [ECF No. 79]. The motion is fully briefed and ready for disposition. For the following reasons, the motion will be denied.

**Background**

This action arises out of the remarketing of student loan revenue bonds. In November 2005 and April 2006, MOHELA issued $383,000,000 of variable rate demand bonds to finance and purchase student loans. These bonds and related assets were placed in trust ("2005 Trust")[1], and Wells Fargo was named the trustee. The bonds were secured by a bond insurance policy issued by MBIA Insurance Corporation ("MBIA"), and a "liquidity facility" provided by Depfa Bank plc ("Depfa"), to fund the purchase of any bonds tendered by investors. Any bonds so tendered would then be held by Depfa as "liquidity provider bonds" and resold by designated

---

[1]The trust is governed by a Trust Indenture dated November 1, 2005 between MOHELA and Wells Fargo, a Supplemental Trust Indenture dated November 1, 2005 between MOHELA and Wells Fargo, and a Supplemental Trust Indenture dated April 1, 2006 between MOHELA and Wells Fargo. (First Amended Complaint, Doc. No. 38, ¶ 10).

remarketing agents. Under the Indenture and Remarketing Agreement, liquidity provider bonds were not to be remarketed unless the liquidity facility was in place, and such bonds were not to be released by Wells Fargo, as trustee, unless Well Fargo had received notice from Depfa to this effect.

When the financial and credit crisis began in late 2007, investors began to tender their bonds for repurchase. By July 2008, Depfa had purchased all of the bonds and held them as liquidity provider bonds.

In January 2009, Well Fargo & Co., ultimate parent of Wells Fargo Bank, N.A., acquired the Wachovia Defendants.

On February 18, 2009, MBIA's rating was downgraded, which, according to Depfa, was an event of default and an automatic termination of its liquidity facility.[2] MOHELA alleges that as trustee, Wells Fargo knew or should have known about the downgrading of MBIA. (First Amended Complaint, Doc. No. 38, ¶ 26).

In April 2009, MOHELA learned the Wachovia remarketing agent[3] was remarketing $40 million of the bonds at 8.08%, while other remarketing agents had set their interest rate for MOHELA bonds considerably lower.[4] MOHELA alleges that neither Wells Fargo nor the Wachovia remarketing agent sought to verify whether the liquidity facility was in place at this

---

[2]Under Depfa's Standby Bond Purchase Agreement with MOHELA and Wells Fargo, a downgrade in the rating of the bond insurer (MBIA) by Moody's below a "Baa3" rating is an event of default and an Automatic Termination Event. In the event of such an occurrence, Depfa's obligation to maintain the liquidity facility ceased. (First Amended Complaint, Doc. No. 38, ¶ 18)

[3]At this time, Wells Fargo was, through a corporate acquisition, the parent corporation of the Wachovia remarketing agent.

[4]MOHELA alleges comparable bonds were being remarketed at 0.32% to 1.51%, with an average interest rate of 0.64% (First Amended Complaint, Doc. No. 38, ¶¶ 30, 31).

2

time, even though the 2005 Trust provided that the bonds "shall be released only after the Trustee...has received electronic notice from [Depfa] that the Liquidity Facility has been reinstated by the amount of the funds drawn to purchase Liquidity Provider Bonds." (First Amended Complaint, Doc. No. 38, ¶¶ 36-39). Over MOHELA's objection, the sale of the remarketed bonds closed on April 13, 2009, and Wells Fargo, as trustee, released the liquidity provider bonds it held in the 2005 Trust to an unnamed purchaser. MOHELA alleges the unnamed purchaser was affiliated with Wells Fargo and/or the Wachovia defendants. (Id., ¶ 58).

MOHELA further alleges that from April 13, 2009 until November 2009, when the 2005 Trust was refinanced, the Wachovia remarketing agent set the weekly interest rate on remarketed bonds at 6.0% or higher, while other remarketing agents of the bonds were setting interest rates at 0.42% to 0.08%. (Id., ¶¶ 41, 42).

On November 4, 2009, the day before the refinancing of the 2005 Trust, Wells Fargo submitted an invoice for administrative and attorneys' fees of $187,747.80, and stated it would not consent to the restructuring unless the invoice was paid.

MOHELA claims that as a result of the Defendants' actions, it was damaged by having to pay excessive interest on the remarketed bonds, and by delays in efforts to refinance the 2005 Trust.

MOHELA's claims against Wells Fargo are based on Wells Fargo's alleged failure to perform its duties under the 2005 Trust. In Count I, Breach of Fiduciary Duty - Breach of Trust, MOHELA alleges Wells Fargo breached its duty to verify whether the liquidity facility was in place before releasing the remarketed bonds, and breached its fiduciary duties by releasing the remarketed bonds under the circumstances that existed on April 13, 2009, including MOHELA's objection to the remarketing and high interest rate. In Count II, Breach of Fiduciary Duty - Breach of Loyalty, MOHELA alleges that as trustee, Wells Fargo owed a duty of undivided

3

loyalty to MOHELA, a duty it breached by the above alleged conduct, which resulted in the Wachovia Defendants, entities affiliated with Wells Fargo through a common parent, selling the remarketed bonds at a high interest rate to a purchaser related to them. In Count III, Negligence, MOHELA alleges Wells Fargo was negligent for failing to exercise, as trustee, the highest degree of care in the above matters.

Wells Fargo filed its counterclaim against MOHELA based on certain indemnification provisions in the 2005 Trust, alleging that if it is found liable for any loss, liability or expense in connection with this lawsuit incurred without negligence, willful misconduct, or bad faith on its part, it is entitled to payment and/or reimbursement, including its legal costs and expenses in the event of a complete defense verdict. Section 1004 of the 2005 Trust states in pertinent part that Wells Fargo as trustee shall be entitled to payment or reimbursement:

> (c) to indemnify [Wells Fargo] for, and to hold it harmless against, any loss, liability or expense incurred without negligence, willful misconduct, or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

Section 1004 goes on to require Wells Fargo as Trustee to:

> promptly notify [MOHELA] in writing of any claim or action brought against [Wells Fargo] in respect of which indemnity may be sought against [MOHELA], setting forth the particulars of such claim or action, and [MOHELA] will assume the defense thereof, including the employment of counsel satisfactory to [Wells Fargo] and the payment of all expenses.

**Legal Standard**

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir.2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir.2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable

inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir.2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

**Arguments of the Parties**

In support of its motion, MOHELA argues Wells Fargo's counterclaim must be dismissed because the 2005 Trust does not expressly require MOHELA to indemnify Wells Fargo for its wrongful conduct as alleged in the amended complaint, and because Wells Fargo has failed to allege compliance with the notice requirements of the indemnification provisions.  MOHELA's claims for breach of fiduciary duties and negligence involve negligence, wilful misconduct and bad faith. This, MOHELA argues, coupled with the requirement that MOHELA assume the defense of a claim and hire counsel to defend Wells Fargo, leads to the conclusion that the only construction of the 2005 Trust is that the indemnification provisions were not intended to apply to a dispute between Wells Fargo and MOHELA, but rather to third-party claims where MOHELA and Wells Fargo were co-defendants. (Plaintiff's Memorandum in Support of its Motion to Dismiss, Doc. No. 80, p. 5).

Wells Fargo responds that it has pleaded the requisite facts in support of its counterclaim, i.e., that its relationship with MOHELA is governed by a 2005 Trust Indenture, and that section 1004(c) of the 2005 Trust requires MOHELA to indemnify Wells Fargo under certain circumstances. Wells Fargo argues it is not seeking indemnity for negligence, willful misconduct or bad faith, and that because MOHELA filed this lawsuit, it already had notice and was not prejudiced by Wells Fargo's failure to comply with the notice provision. (Wells Fargo Bank, N.A.'s Memorandum in Opposition, Doc. No. 85, pp. 2-3, 5).

In reply, MOHELA insists its claims are excluded from the indemnification provision of the 2005 Trust, and that any other interpretation would relieve Wells Fargo of liability for failing to perform its duties as trustee. As a fiduciary under an agreement, Wells Fargo cannot breach that agreement and then seek indemnification for its own breaches of duty. (Plaintiff's Reply Memorandum, Doc. No. 94, pp. 2-3).

**Discussion**

It is not the function of the Court on a motion to dismiss, as opposed to a motion for summary judgment, to determine whether movant is entitled to judgment as a matter of law. The purpose of a motion to dismiss is to test the sufficiency of the complaint; a viable complaint must include enough facts to state a plausible claim. After reviewing the pleadings, the Court finds Wells Fargo has stated a plausible claim for indemnification given the plain language of the indemnification provisions. First, Wells Fargo alleges that the 2005 Trust was executed by MOHELA and Wells Fargo. (Wells Fargo Bank, N.A.'s Answer to Counts I, II, and III of Plaintiff's First Amended Complaint and Counterclaim, Doc. No. 72, p. 14, ¶ 2). Next, section 1004 of the 2005 Trust states, in part that:

6

> The Trustee shall be entitled to payment or reimbursement, as follows… to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence, willful misconduct, or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.
>
> All such payments and reimbursements shall be made by the Authority with interest at the rate of interest per annum equal to the prime rate announced from time to time by the Trustee.

(Id., pp. 14-15, ¶3). Wells Fargo further alleges that in this lawsuit, MOHELA's claims against Wells Fargo "arise out of or are in connection with the acceptance or administration of the 2005 Trust by Wells Fargo." (Id., p. 15, ¶ 4). Finally, Wells Fargo alleges that in the event it is found liable for "any loss, liability or expense in connection with this lawsuit incurred without negligence, willful misconduct, or bad faith on Wells Fargo's part," it is entitled to payment and/or reimbursement pursuant to Section 1004 of the 2005 Trust. (Id., p. 15, ¶ 5). Contrary to MOHELA's argument, Wells Fargo is not seeking indemnification for its own negligence.

At this stage of the litigation, without more development of the facts, the Court cannot find Wells Fargo's contractual indemnification claim is precluded as a matter of law. The issue of proof is not before the Court at this time and the Court's review is limited to the sufficiency of the allegations. Wells Fargo's pleadings, viewed in a light most favorable to Wells Fargo, show it has pled a plausible contractual indemnification claim.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Higher Education Loan Authority of the State of Missouri's Motion to Dismiss Counterclaim of Defendant Wells Fargo Bank, N.A. [79] is **DENIED**.

Dated this 19th day of June, 2012.

                                                                _____
                                                                 JOHN A ROSS
                                                                 UNITED STATES DISTRICT JUDGE